[Civ. No. 16964. Fourth Dist., Div. One. Dec. 19, 1978.]

SCOTT T. BARNES, Plaintiff and Appellant, v.
PERSONNEL DEPARTMENT OF THE CITY OF EL CAJON,
Defendant and Respondent;
CITY OF EL CAJON, Real Party in Interest and Respondent.

Robert H. Lynn for Plaintiff and Appellant.

Linley, McDougal, Meloche & Murphy, Stephen M. Eckis, Ruston, Nance & Dicaro and Thomas Grady for Defendant and Respondent and for Real Party in Interest and Respondent.

OPINION

**BROWN (Gerald), P. J.**—Scott T. Barnes appeals the denial of his petition for a writ of mandate to direct the Personnel Department of the City of El Cajon (Department) to set aside its order dismissing him from the police force.

Barnes was a probationary officer with the City of El Cajon (City) when he arrested Brant Hokanen. Hokanen sued City for false arrest. After investigation Barnes was dismissed. On appeal he claims he was denied procedural due process because the investigation preceding his dismissal did not comply with the Public Safety Officers Procedural Bill of Rights Act (Officers' Act) (Gov. Code, § 3300 et seq.).

The parties agree Barnes was a probationary employee. Under El Cajon Municipal Code section 2.72.100 a probationary employee may be terminated without the right to a hearing or an appeal. Barnes contends the Officers' Act, which mandates a hearing, applies to all peace officers and supersedes the city's ordinance. Government Code section 3301 defines the scope of the act. "For purposes of this chapter, the term public safety officer means all peace officers, as defined in Section 830.1 and subdivisions (a) and (b) of Section 830.2 of the Penal Code, including peace officers who are employees of a charter city or county." Peace officers under the named Penal Code sections include "any policeman . . . regularly employed and paid as such . . . ." (Pen. Code, § 830.1.) ■ A probationary police officer is regularly employed and paid as a police officer. Under the statutory definition probationary employees are covered by the Officers' Act.

Government Code section 3300 et seq. set out the procedural details of the hearing required when punitive action against a peace officer is contemplated. Barnes claims City violated these procedures by: failing to make a complete tape recording of an interview held January 21, 1977 (Gov. Code, § 3303, subd. (f)); denying Barnes access to the tape of the January 21 interview; coercing Barnes into taking a polygraph (Gov. Code, § 3307) and threatening him with punitive action if he did not sign a waiver form (Gov. Code, § 3303, subd. (c)); denying Barnes access to a tape of the polygraph; holding the January 21st interview during Barnes' sleeping hours; not paying him for the time spent in the January 21st hearing (Gov. Code, § 3303, subd. (a)); withholding the nature of the investigation from him (Gov. Code, § 3303, subd. (c)); failing to inform Barnes of his constitutional rights (Gov. Code, § 3303, subd. (g)); failing

to tell Barnes who was conducting the investigation; and failing to incorporate Barnes' report of the incident in the investigative report.

■ Before looking at the evidence we remind Barnes that absent proof to the contrary in a review of an administrative determination it is presumed the findings are supported by substantial evidence (*Smith* v. *Regents of University of California,* 58 Cal.App.3d 397, 405 [130 Cal.Rptr. 118]). ■ In a review of the trial court finding any conflict in the evidence is resolved in favor of the prevailing party and all reasonable inferences are made to uphold the findings. (*Lacy* v. *California Unemployment Ins. Appeals Bd.,* 17 Cal.App.3d 1128, 1134 [95 Cal.Rptr. 566].)

■ ■■■ Here Barnes is challenging the procedure used by City in coming to the decision to terminate him.[1] As for his complaints about the interview of January 21, 1977, there was substantial evidence this was a five-minute chance encounter in the hall between Barnes and the investigating officer which warranted neither taping nor compensation. There was evidence Barnes was told during the first investigatory interview on January 26, 1977, what the investigation concerned and who was conducting it, and was informed of his constitutional rights. There was evidence Barnes voluntarily took the polygraph and voluntarily signed the waiver on January 28, 1977. There was evidence all tapes and personnel reports were made available for Barnes' perusal even though other information, confidential because of the pending suit against City, would not necessarily be released to him (Gov. Code, § 3303, subd. (f)). The pertinent investigative report, although not directly available to Barnes because of the confidentiality problem, was summarized as part of his final performance report and was made available to him in that form. Under the circumstances, this satisfied the requirements of the Officers' Act. There is substantial evidence to support the trial court's finding that City substantially complied with the procedural requirements of the Officers' Act.

Barnes claims there was not substantial evidence to support his termination. A review of the record shows there was, under either the substantial evidence or the independent judgment rule. However, such a review is superfluous since Barnes could be terminated at will. ■ Just

[1]Barnes claims certain declarations were improperly considered by the trial court because they were made after the administrative proceedings presumably in anticipation of Barnes' court appeals. However, the administrative hearing concerned Barnes' termination, not the procedural aspects of the administrative process. By raising these new issues in his mandamus petition, Barnes created the need for declarations by City addressing these points. It was not error for the trial court to consider them.

because the Officers' Act provides certain procedural safeguards and allows a probationary employee to establish a formal record of the circumstance surrounding his termination does not mean City cannot terminate its probationary peace officers without cause.

Barnes contends it was improper for the City manager to serve as the hearing officer on appeal when it was he who had made the initial decision to terminate Barnes. However, Barnes, represented by counsel, never objected to having the City manager sit in review. He cannot now challenge City's procedure.

The order is affirmed.

Cologne, J., and Harelson, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.