[Civ. No. 18676. Fourth Dist., Div. One. Oct. 31, 1980.]

ROBERT L. BELL, Plaintiff and Appellant, v.
JOHN DUFFY, as Sheriff, etc., Defendant and Respondent.

644

COUNSEL

Gregory G. Petersen for Plaintiff and Appellant.

Donald L. Clark, County Counsel, Lloyd M. Harmon, Jr., Chief Deputy County Counsel, and Arlene Prater, Deputy County Counsel, for Defendant and Respondent.

OPINION

**STANIFORTH, J.**—Robert L. Bell petitioned for a writ of mandate (Code Civ. Proc., § 1094.5) in the superior court alleging he was a sworn peace officer as defined by Penal Code section 830.1, entitled to an administrative appeal pursuant to Government Code section 3304, subdivision (b), before termination from temporary employment with the County of San Diego Sheriff's Department.

In response John Duffy, Sheriff of the County of San Diego, alleged Bell was employed as a "temporary guard," not a peace officer embraced in Penal Code section 830.1 Respondent claims Bell is without the protection afforded "peace officers" by the so-called "Public Safety Officers Procedural Bill of Rights Act" (Act). (Gov. Code, § 3300 et seq.)[1]

The superior court entered judgment on January 5, 1979, dismissing the writ of mandate. The trial court reasoned "the Legislature in enacting 3300 [Gov. Code] and the following sections, did not intend a sweeping elimination of the long-standing right of governmental agencies to summarily terminate temporary...employees without a hearing." Additionally the court determined the Act could not constitutionally be applied to regulate a matter of municipal concern in a charter city or county.

Bell appeals asserting (1) the evidence does not support the lower court's finding appellant was not a "regularly employed" peace officer, (2) due process requires an administrative appeal prior to termination of even a temporary employee, (3) the court erred in concluding this was a matter of local concern and section 3300 et seq. could not constitutionally be applied, and (4) the lower court improperly dismissed Bell's order to show cause re contempt which would have compelled respondent sheriff to answer certain depositions and produce documents.

## FACTS

Bell submitted an employment application (Mar. 20, 1978) to the County of San Diego personnel department for the temporary extra help position of "jail guard" with the San Diego Sheriff's Department. Bell knew of the temporary status of the guard position for which he applied. He was not required, he did not go through the county civil service appointment process for a permanent deputy sheriff position. After an interview in September of 1978, a personal requisition was forwarded to the personnel department. The position was for temporary employment as guard designated from "extra help payroll."

On October 2, 1978, Bell commenced employment. About the same time, he applied for and was approved for a special deputy sheriff commission for the designated purposes of service of civil process and

---

[1]All references are to the Government Code unless otherwise specified.

custody of prisoners. Bell agreed to the specific conditions of this commission, stating in writing "the sheriff has the right to cancel...[the] Special Deputy Sheriff commission at any time he deems it necessary." William W. Knowles, of the sheriff's department, testified a "special deputy" is one commissioned to perform a specific limited function; it may be a clerk or even a nonemployee and is not a specific job classification with the county; these employees are paid less than regular deputies, are not required to take civil service exams, and wear badges different from deputy sheriffs.

Bell performed some of the duties of a deputy sheriff. He acted as bailiff, opening and closing the courtroom, and maintained prisoners. All of the duties were performed with uniform in deputy sheriff's attire and armed with a loaded firearm. Witness Knowles explained there were certain responsibilities, including investigation of crimes, crime prevention in the community and nonuniform work in criminal law enforcement, which Bell as special deputy could not perform that a deputy sheriff could.

On October 27, 1978, after working approximately four weeks, a termination interview with Bell lead to his dismissal from his position as guard. One declared basis of this decision placed significance on "additional information requested" which came to respondent's attention. Bell sought to uncover the specifics of this information but the court denied his discovery attempts.

DISCUSSION

I

■ To enlist the protection of the Act's entitlement to an administrative appeal prior to termination (§ 3304, subd. (b)), Bell must establish he is a "public safety officer" as contemplated by section 3301. Section 3301 incorporates the definition of "peace officer" contained in section 830.1 and subdivisions (a) and (b) of section 830.2 of the Penal Code, including peace officers who are employees of a charter city or county. Thus, "[a]ny sheriff, undersheriff, or deputy sheriff, *regularly employed and paid as such*" receives the safeguards of the Act. (Pen. Code, § 830.1; italics added.)

For Bell to be entitled to relief under the Act, he must satisfy the twofold requirement of being a "peace officer" and being "regularly em-

ployed and paid as such." ■ Overwhelming evidence supports the trial judge's conclusion; Bell was not a *regularly* employed peace officer. Testimony highlighted the temporary and limited nature of Bell's duties as was spelled out in his job application. Bell can claim no frustration of reasonable expectation resulting from his termination. He secured his job without overcoming the usual hurdles an applicant to civil service must cross, including competitive examinations. (San Diego County Charter, §§ 906, 906.1; 907(c); *Campbell v. Board of Civil Service Comrs.* (1946) 76 Cal.App.2d 399, 404-405 [173 P.2d 58]; *Snow v. Board of Administration* (1978) 87 Cal.App.3d 484, 488, 489 [151 Cal.Rptr. 127].) The temporary nature of the position could not have been made more evident to him. Bell can claim no misleading.

■ The protection of the Act extends to probationary police officers. (*Barnes v. Personnel Department* (1978) 87 Cal.App.3d 502, 504 [151 Cal.Rptr. 94].) Yet if this Act is interpreted to extend to temporary guards hired under such terms and conditions as Bell, then the temporary employee would gain the substance of civil service status contrary to the express intent of the charter provisions. If the sheriff could by the process of hiring temporary guards, without examinations, certification, appointment as provided for classified personnel and San Diego County Charter section 906 et seq., then the assigning of such person to the duties usually performed by civil service personnel would erode the "'entire fabric of the civil service system....'" (*Snow v. Board of Administration, supra*, 87 Cal.App.3d 484, 489.) Or if the temporary employee by the mere assumption and performance of duties of a character performed by a classified employee, could thereby obtain civil service status and its perquisites, then promotions and appointments in civil service would no longer be made "exclusive under a general system based upon merit, efficiency and fitness as ascertained by competitive examination.'" (*Pinion v. State Personnel Board* (1938) 29 Cal.App.2d 314, 319 [84 P.2d 185].)

To extend coverage of the Act to a temporary guard ignores the plain explicit language of Penal Code section 830.1. Bell was not a "peace officer" within the meaning of the Act.

■ Bell next contends by acting as a bailiff, his temporary guardship and special commission were transformed into a "county peace officer" status as defined by sections 31904 and 31469.1.

These definitions relate to county employees and county peace officer retirement laws and are expressly (§ 31903), or rationally should be, limited to the construction of their respective chapters. In any event, whether Bell's temporary work falls within these retirement laws' definitions does not aid Bell here for he must meet the express requirements of section 3301 and Penal Code section 830.1 before he can claim the benefits of section 3304, subdivision (b).

In *Globe* v. *County of Los Angeles* (1958) 163 Cal.App.2d 595, 603 [329 P.2d 971], the appeal court answered a similar claim of a temporary county employee thus: "[A] temporary employee has no vested right to county employment and may therefore be discharged summarily." The result would be different were the dismissal based upon the exercise of an employee's constitutional right. And at page 601, the court stated: "In demanding a hearing regardless of his employment status, petitioner is in effect asking the court to equalize the rights of all civil service employees whether they be temporary, probationary or permanent. To do so would lose sight of the entire philosophy of civil service in government and destroy the distinction between the various classifications."

■ Further, in *Bogacki* v. *Board of Supervisors* (1971) 5 Cal.3d 771, 783 [97 Cal.Rptr. 657, 489 P.2d 537], the court stated: "A public employee serving at the pleasure of the appointing authority...is by the terms of his employment subject to removal without judicially cognizable good cause.... Only when such a public employee can show that his employment has been unjustifiably conditioned on the waiver of his constitutional rights will the courts intervene and give relief. [Citation.]"

The Act does not expressly or by implication eliminate these long-standing distinctions between temporary and permanent employees' rights on termination.

## II

■ Bell next asserts, if not entitled by statute, then the Constitution requires he be provided a hearing, for his good name and reputation is at stake. Bell's reliance on *Board of Regents* v. *Roth* (1972) 408 U.S. 564, 573-574 [33 L.Ed.2d 548, 558-559, 92 S.Ct. 2701, 2707] is misplaced. In *Roth*, the Supreme Court reasoned that termination of an untenured professor did not deny due process because: "The State, in

declining to rehire the respondent, did not make any charge against him that might seriously damage his standing and associations in his community. It did not base the nonrenewal of his contract on a charge, for example, that he had been guilty of dishonesty, or immorality. Had it done so, this would be a different case. For '[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.' [Citations.] In such a case, due process would accord an opportunity to refute the charge before University officials. [Fn. omitted.] In the present case, however, there is no suggestion whatever that the respondent's 'good name, reputation, honor, or integrity' is at stake.

"Similarly, there is no suggestion that the State, in declining to re-employ the respondent, imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities. The State, for example, did not invoke any regulations to bar the respondent from all other public employment in state universities. Had it done so, this, again, would be a different case. For '[t]o be deprived not only of present government employment but of future opportunity for it certainly is no small injury. . . .' [Citations.]" (*Ibid.*)

Here the facts bear striking resemblance. Bell has not alleged specific charges of misconduct accompanying his dismissal injure his reputation. The record makes vague reference in the declaration of William W. Knowles to "certain information. . .regarding Petitioner's job performance as well as receipt of. . .background investigation." Even these references were only made in answering Bell's lawsuit. The termination itself indicated only that he was a temporary employee. On this record, Bell's termination involved no deprivation of due process. (*Bogacki* v. *Board of Supervisors, supra,* 5 Cal.3d 771, 778; *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774]; *Miller* v. *State of California* (1977) 18 Cal.3d 808, 813 [135 Cal.Rptr. 386, 557 P.2d 970].)

## III

The trial court held the Act "cannot be constitutionally applied to temporary—nonpermanent—employees of the County of San Diego" to grant a right to hearing before termination. The court opined "that is a matter of local concern." This reason assigned flies in the face of the express statutory language and the well reasoned opinion of the California Attorney General (61 Ops. Cal. Atty. Gen. 31) which documents

with sound rationale and authorities the constitutionality of and the applicability of the Act, as its explicit language commands, to peace officers employed by a charter county. Our conclusion that Bell was neither "regularly employed" nor a "peace officer" within the Act, subsumes the premises of constitutionality and applicability of the Act. The trial court's ruling was, however, correct in law. Therefore, it will not be disturbed on appeal on the sole ground it was made for the wrong reason. (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [112 Cal.Rptr. 786, 520 P.2d 10].)

■ Finally, Bell complains the trial judge erred in dismissing his order to show cause re contempt for the sheriff's allegedly willful refusal to obey the court's order to answer certain questions presented at a deposition and to produce documents and records relating to Bell's employment. The court below correctly determined the dispositive issue in this case; it inquired whether Bell qualified for an administrative hearing pursuant to section 3301 et seq. Bell's petition and amended petition sought only the procedural safeguards of the Act. Any materials relating to Bell's personnel and background records were not relevant in determining his temporary employment status and its legal effect. The order was properly dismissed.

Judgment affirmed.

Brown (Gerald), P. J., and Cologne, J., concurred.