[Civ. No. 19719. Third Dist. Mar. 26, 1981.]

JIRO J. ENOMOTO, Plaintiff and Appellant, v.
EDMUND G. BROWN, JR., as Governor, etc., Defendant and
Respondent;
RUTH L. RUSHEN, as Director, etc., Real Party in Interest and
Respondent.

**COUNSEL**

McMaster & Stump and Loren E. McMaster for Plaintiff and Appellant.

George Deukmejian, Attorney General, and Richard D. Martland, Assistant Attorney General, for Defendant and Respondent and for Real Party in Interest and Respondent.

**OPINION**

**BLEASE, J.**—Jiro J. Enomoto appeals from an order denying a writ of mandate by which he sought to prevent Governor Edmund G. Brown, Jr., from removing him from his office as Director of Corrections pending compliance with Penal Code section 5051. We affirm the order.

I

Enomoto was appointed by Governor Brown to the office of Director of Corrections in December 1975. On April 17, 1980, Governor Brown announced the appointment of real party in interest Ruth L. Rushen to the position. Four days later, Enomoto sought the relief under review. On April 22, 1980, Rushen received her commission as Director of Corrections and on the following day she took the oath of office and commenced occupying the position. On April 24 the cause was heard and on May 28, 1980, the writ was denied.

## II

Enomoto does not claim and the record is wholly devoid of any evidence or suggestion that he was replaced as Director of Corrections for any reason impugning his performance in the job. So far as this record is concerned, the Governor simply replaced one person with another in the exercise of his power to fill the position of Director of Corrections "at his pleasure."

Rather, Enomoto relies upon the provisions of Penal Code section 5051 which he claims preclude his replacement unless and until charges are preferred against him, a hearing is held on the charges and findings are made by the Board of Corrections.

Section 5051 provides: "The director shall be appointed by the Governor with the advice and consent of the Senate. *He shall hold office at the pleasure of the Governor, but before the director may be removed, charges against him, which charges may be preferred by any person, shall be heard by the Board of Corrections.* The Board of Corrections shall make detailed findings with respect to the charges and submit the findings to the Governor. *The Governor may, but need not, abide by the findings of the Board of Corrections, and may retain or remove the director.* If the Governor removes the director his action shall be final. He shall receive an annual salary provided for by Chapter 6 of Part 1 of Division 3 of Title 2 of the Government Code, and shall devote his entire time to the duties of his office." (Italics added.)

Enomoto conceded on oral argument that the provisions of section 5051 that "[h]e shall hold office at the pleasure of the Governor," mean that the Governor may remove the Director of Corrections for any reason[1] or for no reason at all.

But, he says, the succeeding clause ("but before the director may be removed, charges against him, . . . shall be heard by the Board of Corrections") procedurally conditions the exercise of the Governor's "pleasure." He then argues that charges *must* in any case be preferred and a hearing held before removal.

---

[1](Absent, of course, a reason precluded by the federal or state Constitution. No such reason is here asserted.)

We agree that the "charges" clause *procedurally* conditions the exercise of the Governor's "at pleasure" powers *when it applies*. But, we also agree with the Attorney General that the procedural conditions apply only *if* "charges against" the Director of Corrections are "preferred by any person." No such charges have been preferred.

Enomoto contends that, in enacting the statute, the Legislature evinced an "obvious purpose of restricting the Governor's 'pleasure powers' . . . ." in order to "protect the Director from arbitrary removal."[2] As we shall show, the procedural conditions relating to charges do serve an important public purpose *if* charges are filed.

In section 5051 we are presented with conjoined clauses of different import. Enomoto claims they have plain meanings which we are directed to follow. (See *Great Lakes Properties, Inc.* v. *City of El Segundo* (1977) 19 Cal.3d 152, 155 [137 Cal.Rptr. 154, 561 P.2d 244]; *City of Lafayette* v. *County of Contra Costa* (1979) 91 Cal.App.3d 749, 757 [154 Cal.Rptr. 374]; *Smith* v. *Rhea* (1977) 72 Cal.App.3d 361, 365 [140 Cal.Rptr. 116].)[3] We agree. The "at pleasure" clause plainly embraces any reason or no reason for removal. But the words "charges against him" cannot be plainly read to mean any reason or, as here, no reason, without draining the words of their ordinary meanings. In the context of section 5051, "charges against" carries an invidious meaning, suggesting misconduct, incompetency, or neglect of duty.[4] No such conduct is present here. We decline Enomoto's invitation to say that mere

---

[2]Enomoto notes that, when it was introduced, the bill which became Penal Code section 5051 (Sen. Bill No. 1 [1944 3d Ex. Sess.]) provided merely for an "at pleasure" tenure and was amended to read substantially as it does now. Such an amendment, Enomoto argues, by analogy to cases involving amendments to statutes (e.g., *Smith* v. *Rhea* (1977) 72 Cal.App.3d 361 [140 Cal.Rptr. 116]), gives rise to a presumption that a change was intended thereby. It was, but not the one desired by Enomoto.

[3]Enomoto offers a battery of other canons of statutory construction. He reminds us that modifying phrases should generally be applied to the words immediately preceding them (*People* v. *Corey* (1978) 21 Cal.3d 738, 742 [147 Cal.Rptr. 639, 581 P.2d 644]), that every word, phrase or provision of a statute is presumed to have a meaning and perform a function (*Smith* v. *Rhea, supra*, 72 Cal.App.3d at p. 370), and that it is a court's duty to faithfully interpret a statute rather than amend it by omission or insertion (Code Civ. Proc., § 1858). We, of course, agree with these propositions and apply them.

[4]The term "charges" was used in connection with "misconduct, incompetency or neglect of duty" in an earlier constitutional provision governing the terms of office of members of the State Board of Prison Directors, to whose supervisory responsibilities over the California penal system the director succeeded. (Former Cal. Const., art. X, § 1 [repealed Nov. 7, 1972].)

removal from the position of Director of Corrections carries with it an invidious meaning.

Conversely, to give "charges" its ordinary meaning and to require that charges be preferred prerequisite to removal is to nullify the Governor's "at pleasure" powers and to permit removal only for cause.

Enomoto concedes that cause is not required. The logic of his construction of section 5051 then is to require a hearing by the Board of Corrections on a "charge" of "no reason" and therefore for no reason.

The only sensible way to give the "at pleasure" and "charges" clauses of section 5051 their plain meanings is to conclude that a hearing is required before removal only *if* charges are preferred. This reading complies with the statutory language. Section 5051 states that the director "shall hold office at the pleasure of the Governor, but before the director may be removed, charges against him which ... *may* be preferred ... shall be heard by the Board of Corrections." (Italics added.) It does *not* state that charges *must* be preferred (in fact, the contrary "may"), but only that "charges ... shall be *heard*." (Italics added.) If there are no charges, there is nothing to hear and therefore no procedural impediment to removal.

Our construction of section 5051 is consistent with its origins. When it was enacted, the California Constitution did not permit the imposition of conditions on removal of state officials whose terms were not prescribed by the Constitution or by statute; such officials served entirely at "the pleasure of the authority making the appointment." (Cal. Const., art. XX, § 16 [repealed Nov. 7, 1972]; and see *People* v. *Hill* (1857) 7 Cal. 97, 102; *Patton* v. *Board of Health etc.* (1899) 127 Cal. 388, 392 [59 P. 702]; *Sponogle* v. *Curnow* (1902) 136 Cal. 580, 582 [69 P. 255].) No term is prescribed for the Director of Corrections. To the contrary, he expressly serves at the pleasure of the Governor. To have required cause for removal (at the date of enactment of § 5051) would have violated the state Constitution.[5]

---

[5]Enomoto's arguments to the contrary are not well taken. His reliance on *Matter of Carter* (1903) 141 Cal. 316 [74 P. 997] and *Cline* v. *Superior Court* (1920) 184 Cal. 331 [193 P. 929] is misplaced; they stand only for the unremarkable proposition that a public official takes his position subject to the conditions placed upon it; they say nothing about what those conditions may be. (*Cline*, at p. 336; *Carter*, at p. 320.) The suggestion that the word "term" does not necessarily refer to duration of time founders on the express limitation in the constitutional provision to "term[s] of four years."

It was with this constitutional backdrop that Penal Code section 5051 was enacted. While Enomoto concedes that the statute does not require "cause" for the director's removal, his interpretation imposes almost the same degree of restriction on the Governor's discretion, unless we presume, and we will not, that the Governor would bring spurious charges in the absence of a basis for bringing legitimate ones.

This does not mean that the statute's requirement of a hearing when charges are filed against the director is meaningless or superfluous. When "charges" are made public in connection with, or even coincident to, removal from office, cognizable damage may be done to the individual's reputation and standing in the community. (*Owen* v. *City of Independence* (1980) 445 U.S. 622, 633-634 fn. 13 [63 L.Ed.2d 673, 682-683, 100 S.Ct. 1398]; Board of *Regents* v. *Roth* (1972) 408 U.S. 564, 573 [33 L.Ed.2d 548, 558-559, 92 S.Ct. 2701].)[6] The administration of California's corrections system is a difficult and sensitive job and its director may be particularly subject to malicious charges. Recognition of this explains the Legislature's evident decision to leave unfettered the Governor's discretion regarding the removal of the director, but at the same time to afford the director a "name-clearing" hearing when charges have been brought against him.

We conclude that the trial court correctly interpreted the requirements of Penal Code section 5051 and that, in the absence of any charges having been preferred against Enomoto, no hearing was required before his removal.

The judgment is affirmed.

Reynoso, Acting P. J., and Carr, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 20, 1981.

---

[6]Enomoto seeks to bring this case within the ambit of *Owen* v. *City of Independence* (1980) 445 U.S. 622 [63 L.Ed.2d 673, 100 S.Ct. 1398] or *Branti* v. *Finkel* (1980) 445 U.S. 507 [63 L.Ed.2d 574, 100 S.Ct. 1287]. He has failed. In *Owen*, the Supreme Court reaffirmed the proposition that when a public servant's removal from his position is accompanied by government actions which put his good name, reputation, honor or integrity at stake, he has a "liberty" interest in obtaining a "name-clearing" hearing (*id.*, at pp. 633-634 [63 L.Ed.2d at pp. 682-683, fn. 13]); here, Enomoto was denied the right to a hearing precisely because there were no charges preferred against him and neither his character nor his competence is questioned.