[Civ. No. 22472. Third Dist. Mar. 19, 1984.]

TERENCE A. SWIFT, Plaintiff and Appellant, v.
COUNTY OF PLACER et al., Defendants and Appellants.

## COUNSEL

Richard J. Chiurazzi and David P. Mastagni for Plaintiff and Appellant.

L. J. Dewald, County Counsel, for Defendants and Appellants.

## OPINION

**DAWSON, J.**\*—Terence A. Swift petitioned for a writ of mandate commanding respondents, County of Placer, its sheriff and civil service commission, to reinstate him as a Placer County deputy sheriff with back pay and to grant him an administrative hearing. Swift's petition tenders two claims. He first claims he is entitled to permanent status pursuant to the county civil service ordinance but was unlawfully summarily terminated as a probationary employee. The alternate claim is, probationer or not, he was unlawfully terminated without an opportunity for the administrative appeal compelled by the Public Safety Officers Procedural Bill of Rights Act. (Gov. Code, § 3300 et seq.)[1] The trial court issued a peremptory writ commanding respondents (hereafter county) to afford Swift an "appropriate hearing" on the latter claim, i.e., a hearing for the limited purpose of establishing a formal record of the circumstances of his termination. The trial court denied the petition in all other respects. Swift appeals from the judgment. The county appeals from the portion of the judgment granting Swift a limited hearing.

---

\*Assigned by the Chairperson of the Judicial Council.

[1]Hereafter this enactment is referred to as the Police Bill of Rights. All nondescript statutory references are to the Government Code.

## FACTS

On August 23, 1979, Swift was hired as a correctional officer with the Placer County Sheriff's Department. He was employed as a correctional officer until August 13, 1980. At that time he was hired from an open eligible hiring list and appointed deputy sheriff. When appointed he was informed he would be subject to a 12-month probation period. On July 25, 1981, he received a notice of rejection during probation. The notice by its terms was effective August 9, 1981, and Swift was returned to the status of correctional officer at that time.

On August 5, 1981, Swift filed a notice of appeal with the county civil service commission requesting an administrative hearing concerning his termination as a deputy sheriff. The notice contends he is entitled to a hearing pursuant to section 3304, subdivision (b). The commission denied his request.

Sometime during August or September Swift made another request for a hearing. The second request was premised on the claim he should have been accorded permanent status pursuant to the county ordinance. The commission granted him a hearing on this contention. The commission found that Swift was a probationary employee and dismissed his appeal as meritless.

Swift's claim of permanent status is founded on the ordinance prescribing the probationary period for county employees. The ordinance provides the period is six months with an exception for all sworn peace officers in the sheriff's office "who are initially being hired into employment with Placer County."[2] Such persons must complete a probation period of 12 months. This ordinance was enacted in September 1979. The previous ordinance provided the identical six-month standard probation period with an exception "for the class of Deputy Sheriff . . . for which the probationary period shall be twelve (12) calendar months."[3]

---

[2]The pertinent text of the ordinance is: "(a) All permanent appointments from open or promotional eligible lists to positions in the Classified Service shall be for a probationary period of six (6) calendar months (1040 working hours), except for the classes of Appraiser I, Auditor-Appraiser I, and all sworn peace officers located in the Sheriff's and District Attorney's offices who are initially being hired into employment with Placer County, for which the probationary period shall be twelve (12) calendar months (2080 working hours)."

[3]The pertinent text of this prior ordinance is: "All permanent appointments from open or promotional eligible lists to positions in the Classified Service shall be for a probationary period of six (6) calendar months, except for the class of Deputy Sheriff, Junior Appraiser and Junior Auditor-Appraiser for which the probationary period shall be twelve (12) calendar months. Permanent part-time employees must work 1040 hours to complete their probationary period."

Swift argued that as he was not being "initially . . . hired" into county employment when appointed a deputy sheriff, his probationary period should be six months by the terms of the amended ordinance. At the commission hearing evidence of the origin of the amendment was taken as an extrinsic aid to fathoming the purpose of the language change. The evidence shows that early in 1979 a dispute arose concerning newly hired probationary officers who had experience as a sworn peace officer in other jurisdictions. The ordinance was amended as related above solely in response to this dispute. The civil service commission rejected Swift's claim, concluding the only purpose of the change in language was to insure that persons with experience as peace officers in other jurisdictions, e.g., as deputy sheriffs, would be subjected to the longer 12-month probationary period.

DISCUSSION

I

Swift first contends the trial court erred in rejecting his claim of permanent status. On appeal his sole argument is that his entitlement flows from the "plain meaning" of the amended ordinance.[4] Swift reasons the extrinsic evidence of the purpose of the amendment of the civil service ordinance may not be considered in such a case. The plain meaning argument is not persuasive and the contention is without merit.

Swift correctly notes the canons of statutory construction apply with the equal force to the construction of ordinances. (See *In the Matter of Yick Wo* (1885) 68 Cal. 294, 303 [9 P. 139], revd. on other grounds *sub nom., Yick Wo* v. *Hopkins* (1886) 118 U.S. 356 [30 L.Ed. 220, 6 S.Ct. 1084].) ■ He relies on the plain meaning rule of statutory construction, i.e., when statutory language is clear and unambiguous it is inappropriate to resort to extrinsic aids to construction. (See, e.g., *People* v. *Boyd* (1979) 24 Cal.3d

---

[4]Swift also tenders the disembodied claim the trial court erred in conducting review of his permanent status claim pursuant to Code of Civil Procedure section 1094.5. He submits this was error because the grant of a hearing was discretionary and not a hearing "required by law" to be given. Since administrative mandamus under Code of Civil Procedure section 1094.5 is available only when a hearing is required by law (*Taylor* v. *State Personnel Bd.* (1980) 101 Cal.App.3d 498, 502 [161 Cal.Rptr. 677]), Swift contends here, as he did in the trial court, that traditional mandate under Code of Civil Procedure section 1085 is the appropriate procedural method to compel his reinstatement.

Since Swift stipulated at the writ proceeding to his admission of the transcript of the civil service commission hearing, we see no reason to reply to this academic digression at length. The mode of review is not linked to any claim of prejudice and no such claim is tenable on this record. Swift did not propose to offer any new or different evidence in the judicial forum, there is no suggestion credibility of witnesses was in dispute and, in these circumstances, the question is one of law. (See Evid. Code, § 310.) As the disposition could not turn on the mode of review, the argument leads nowhere. (Cal. Const., art. IV, § 13.)

285, 294 [155 Cal.Rptr. 367, 594 P.2d 484]; see generally, 2A Sutherland, Statutory Construction (4th ed. 1973) ch. 46, p. 48 et seq.) The force of the rule depends upon the content afforded the term ambiguity. If the statutory language is reasonably susceptible of two disputed meanings, it is ambiguous in that respect. (Cf. *Pacific Gas & E. Co.* v. *G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 39-41 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373].) In such a case the plain meaning rule affords no sanctuary from consideration of extrinsic aids to construction.

Here the meaning for the probation ordinance contended by the county is: a 12-month probation period obtains whenever it first employs a person as a sworn peace officer. The language of the ordinance is reasonably susceptible of this meaning. The phrase "all sworn peace officers . . . who are initially being hired into employment with Placer County" could reasonably, if inartfully, have been expected to express the meaning urged. The term "employment" could be viewed, in context, as referring to the antecedent employment capacity, i.e., "sworn peace officer[]."[5] Accordingly, the plain meaning rule holds no solace for Swift. The trial court properly considered the extrinsic evidence.

█ Since there is no conflict in the extrinsic evidence, we must make an independent determination of the meaning of the ordinance. (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 866 [44 Cal.Rptr. 767, 402 P.2d 839].)

The predecessor ordinance in 1979 was the subject of dispute concerning probationary status by newly hired officers who had peace officer experience in other jurisdictions. In an effort to make clear that which was in dispute, the form of the ordinance now in question was adopted. We are unable to discern any legislative intent in that ordinance to reduce the probationary period to six months for deputy sheriffs hired from other county departments.

Moreover, logic supports the county's construction of the ordinance. If we adopt Swift's view, a county clerk-typist appointed as a peace officer would have a shorter period of probationary status than a seasoned peace officer hired from outside the county.

Finally, the Commission on Peace Officer Standards and Training (referred to as POST; see Pen. Code, § 13500) has promulgated a regulation (see Pen. Code, § 13506) requiring a peace officer serve in a probationary status for not less than 12 months. (Cal. Admin. Code, tit. 11, § 1004.)

---

[5]Custodial officers are not sworn peace officers. (Pen. Code, § 831.)

Placer County is a POST funding recipient and the county has another ordinance which incorporates the POST standards. To adopt Swift's construction would be to repeal by implication the ordinance adopted pursuant to POST. The better construction is to interpret the two ordinances in order to give validity to each if such an interpretation is permissible.

Accordingly, we agree with the trial court's interpretation of the ordinance. Swift, a newly hired peace officer, was on probationary status for 12 months, not 6 months. As a probationer, he was subject to rejection without cause so long as such rejection was not premised on a violation of Swift's constitutional or other basic rights. As will appear hereafter, no such violation was involved and therefore we affirm the judgment denying reinstatement and back pay. (*Doyle* v. *City of Chino* (1981) 117 Cal.App.3d 673, 678 [172 Cal.Rptr. 844]; *Barnes* v. *Personnel Department* (1978) 87 Cal.App.3d 502, 506 [151 Cal.Rptr. 94].)

II

Swift alternately contends the trial court erred in limiting the scope of the hearing it ordered premised on the Police Bill of Rights. The court concluded he could be terminated at will but the statute nonetheless required an administrative hearing to establish a formal record of the circumstances of the termination. ■ The county on cross-appeal contends no administrative hearing of any variety is required. We agree with the county.

The reason for Swift's rejection from permanent status was "[he] has not demonstrated all the qualifications necessary to be a deputy sheriff, i.e., failure to meet minimum work standards." On this record Swift's rejection involved no deprivation of due process. (*Miller* v. *State of California* (1977) 18 Cal.3d 808, 813 [135 Cal.Rptr. 386, 557 P.2d 970]; *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774]; *Bogacki* v. *Board of Supervisors* (1971) 5 Cal.3d 771, 783 [97 Cal.Rptr. 657, 489 P.2d 537]; *Henneberque* v. *City of Culver City* (1983) 147 Cal.App.3d 250, 255 [194 Cal.Rptr. 869]; *Lubey* v. *City and County of San Francisco* (1979) 98 Cal.App.3d 340, 346-347 [159 Cal.Rptr. 440].) We emphasize no charge of misconduct was made against Swift. (*Lubey* v. *City and County of San Francisco, supra,* 98 Cal.App.3d at p. 346.) ■ The *Lubey* court noted: "It is settled law that a probationary (or nontenured) civil service employee, at least ordinarily, may be dismissed without a hearing or judicially cognizable good cause. [Citations.]" (*Id.,* at p. 345.) Further, in *Bogacki* v. *Board of Supervisors, supra,* 5 Cal.3d at page 783, the court stated: "A public employee serving at the pleasure of the appointing authority . . . is by the terms of his employment subject to removal without judicially cognizable good cause. . . . Only when such a public employee

can show that his employment has been unjustifiably conditioned on the waiver of his constitutional rights will the courts intervene and give relief. [Citation.]"

■ Bare rejection during an initial hiring probation is not "punitive action" which triggers the "administrative appeal" right provided by section 3304, subdivision (b). (But see *Barnes* v. *Personnel Department, supra,* 87 Cal.App.3d at p. 504.)[6]

Section 3304, subdivision (b), provides: "No punitive action, nor denial of promotion on grounds other than merit, shall be undertaken by any public agency without providing the public safety officer with an opportunity for administrative appeal." The term "punitive action" in section 3304 means any action listed as such in section 3303, regardless of any purpose to punish. (*White* v. *County of Sacramento* (1982) 31 Cal.3d 676 [183 Cal.Rptr. 520, 646 P.2d 191].) Section 3303 defines "punitive action" as "any action which may lead to dismissal, demotion, suspension, reduction in salary, written reprimand, or transfer for purposes of punishment." The threshold issue is one of statutory construction: is rejection during probation "punitive action?"

The absence of "rejection during probation" from the types of personnel actions listed as "punitive action" in section 3303 is highly pertinent. Rejection during probation is a discrete variety of personnel action recognized in the State Civil Service Act. (See § 19173.) The absence of such a recognized variety of personnel action from the list in section 3303 and from the comparable provision of the State Civil Service Act strongly suggests that the right to an administrative appeal provided by section 3304 does not

---

[6]*Barnes* v. *Personnel Department* (1978) 87 Cal.App.3d 502, 506 [151 Cal.Rptr. 94], held that a probationer had a right to a name-clearing hearing. In *Barnes* the discharged officer was accused of making a false arrest. Similarly, *Lubey* v. *City and County of San Francisco* (1979) 98 Cal.App.3d 340 [159 Cal.Rptr. 440], involved a probationer's discharge for misconduct which " 'stigmatized' " his reputation, or " 'seriously impaired' " his opportunity to earn a living. In *Bell* v. *Duffy* (1980) 111 Cal.App.3d 643 [168 Cal.Rptr. 753], petitioner was hired as a temporary "special deputy sheriff." After working some four weeks, he was dismissed. He sought a writ of mandate alleging that he was a peace officer under the Police Bill of Rights and consequently was entitled to an administrative appeal under section 3304, subdivision (b). Although the court of appeal held that petitioner was not such a peace officer, it did state that "[t]he protection of the Act extends to probationary police officers. [Citing *Barnes.*]" (*Id.,* at p. 649.) Some confusion apparently exists as to the right of a probationer to a hearing in situations of a rejection, as here, without any charges that tend to stigmatize the probationary officer's reputation.

apply. (See *White* v. *County of Sacramento, supra,* 31 Cal.3d at p. 683, fn. 4.)[7]

■ This suggestion is reinforced by the consideration that relationships between local governments and their employees are principally matters of local concern. (See, e.g., 61 Ops.Cal.Atty.Gen. 31, 34 (1978).) Some aspects of these employment relationships may rise to the level of matters of statewide concern. (*Professional Fire Fighters, Inc.* v. *City of Los Angeles* (1963) 60 Cal.2d 276, 289-295 [32 Cal.Rptr. 830, 384 P.2d 158].) ■ ■■■ However, when a statute is ambiguous concerning the scope of state law preemption, it should be interpreted in favor of local government autonomy.[8] This approach is commended by the precept of fostering local government authority where appropriate. It is also supported by a prudential desire to avoid problems of constitutional stature which could arise from an expansive reading. (See Cal. Const. art. XI, §§ 3-4.)

The express purpose of the Police Bill of Rights is to assure "the maintenance of stable employer-employee relations," and thus secure effective law enforcement services for all people of the state. (§ 3301.) If no reasonable basis could be posited for distinguishing rejection from probation from the types of personnel action included in section 3303 with respect to this purpose, we would be constrained to attribute its absence to mere oversight. But a determination that this personnel action may warrant different procedures is credible.[9] The construction we elect is not inconsistent with the declared purpose of the Police Bill of Rights. ■ Accordingly, we announce our view that rejection during probation does not lie within the ambit

---

[7]The comparable provision in the State Civil Service Act, section 19570, provides: " 'As used in this article, "punitive action" means dismissal, demotion, suspension, or other disciplinary action.' " The provisions might be better described as parallel rather than comparable. The State Personnel Board "has defined 'other disciplinary action' to include, among other things, official reprimand and reduction in salary." (*Skelly* v. *State Personnel Board* (1975) 15 Cal.3d 194, 202, fn. 11 [124 Cal.Rptr. 14, 539 P.2d 774].)

[8]Unless a county adopts an optional civil service ordinance all employees are ordinarily subject to discharge at will. (See *Bogacki* v. *Board of Supervisors, supra,* 5 Cal.3d 771.) If it has a civil service ordinance, in the absence of some higher law, probationers may be rejected during probation without appeal. (See § 31108; *Cross* v. *Tustin* (1952) 111 Cal.App.2d 395 [244 P.2d 731].)

[9]The very concept of employment probation reflects a historically recognized distinction of rights and expectations of persons for continued employment at the outset of the relation. In law distinction of procedural protections for permanent employees from those available to probationers is often made. (See, e.g., *Skelly* v. *State Personnel Bd., supra,* 15 Cal.3d at p. 202, fn. 10.) We have already noted the Commission on Peace Officer Standards and Training has promulgated a regulation embodying its view that all peace officers should be subjected to a minimum probationary period of 12 months. (See Cal. Admin. Code, tit. 11, § 1004.)

of "punitive action" in section 3304 subdivision (b).[10] No administrative appeal for Swift was compelled by the statute.

DISPOSITION

The portion of the judgment directing that a peremptory writ issue commanding the county to provide Swift with an appropriate administrative hearing is reversed. With that exception the judgment is affirmed.

Puglia, P. J., and Sparks, J., concurred.

A petition for a rehearing was denied April 13, 1984, and the petition of plaintiff and appellant for a hearing by the Supreme Court was denied May 17, 1984.

---

[10]We do not imply that a discriminatory rejection during probation would be beyond redress. (Compare *Bogacki* v. *Board of Supervisors, supra,* 5 Cal.3d at pp. 778-779.) Moreover, we note *Swift tenders no claim of entitlement premised on his* "liberty" interest in obtaining a "name clearing" hearing, and we disavow any view on such a ground of review. (Compare *Enomoto* v. *Brown* (1981) 117 Cal.App.3d 408 [172 Cal.Rptr. 778]; see also Pen. Code, § 832.7 et seq., dealing with confidentiality of peace officer personnel records.)