[Civ. No. 50928. Second Dist., Div. Four. May 18, 1978.]

JOHN J. KESTLER, Plaintiff and Appellant, v.
CITY OF LOS ANGELES et al., Defendants and Respondents.

COUNSEL

Dryden, Harrington & Swartz, George J. Franscell, Dale B. Goldfarb and Steven Lincoln Paine for Plaintiff and Appellant.

Burt Pines, City Attorney, John B. Rice, Assistant City Attorney, and Shelley I. Rosenfield, Deputy City Attorney, for Defendants and Respondents.

OPINION

KINGSLEY, J.—Petitioner appeals from a judgment of the superior court, denying his petition for a writ of mandate to overturn the action of the Chief of Police of the City of Los Angeles dismissing him from the Los Angeles police force. We affirm the judgment.

Petitioner was employed by the Los Angeles Police Department on June 10, 1974, and was sworn to perform the duties of a police officer. As a condition of his employment, he was required to serve a 12-month term as a probationary officer. On the night of March 6, 1975, petitioner attended a retirement party for another Los Angeles police officer.

Alcoholic drinks were freely served and petitioner consumed a substantial amount of those drinks. At about midnight, petitioner left the party, in plain clothing, driving his own car, to go to his home in the City of Inglewood. While stopped at an intersection, some person (unknown) entered his car and assaulted him rendering him unconscious. The attacker stole his wallet, containing his police badge and his police identification card. Recovering consciousness, he drove to the Inglewood police station and reported the attack. He was then taken to a hospital. At that time his blood alcohol was .18 percent (indicating a blood alcohol content of between .22 and .25 percent at the time he left the party).

The incident was reported by the Inglewood police to the Los Angeles department, which investigated it and interviewed petitioner over a period of several months. Ultimately, his superiors recommended to Chief Davis that he be dismissed, and the chief accepted that recommendation and issued an order terminating his employment as of June 4, 1975.

Petitioner sought in superior court a writ to overturn that dismissal. After a hearing, the petition was denied and this appeal followed.

I

Petitioner contends that, under section 202 of the Los Angeles City Charter, he was not subject to dismissal without a formal hearing before a board of rights, which he had not had. The city contends that section 202 is not applicable to probationary officers but that petitioner's rights are determined by section 109 of the charter. We agree with the city's position.

The pertinent portion of section 202, as in force at the time of petitioner's employment and of his dismissal, read as follows:

"Sec. 202. (1) The right of an officer or employee of the Police Department to hold his office or position and to the compensation attached to such office or position is hereby declared to be a substantial property right of which he shall not be deprived arbitrarily or summarily, nor otherwise than as herein in this section provided. No officer or employee of the Police Department shall be suspended, removed, deprived of his office or position, or otherwise separated from the service of the Police Department (other than by resignation), except for good and sufficient cause shown upon a finding of 'guilty' of the specific charge or

charges assigned as cause or causes therefor after a full, fair and impartial hearing before the Board of Rights (except as otherwise specifically provided in paragraphs two (2) and seven (7) of this section). Such charges must be based upon some act committed or omitted by such officer or employee within one (1) year prior to the filing of the complaint referred to herein. No case of suspension with loss of pay shall be for a period exceeding six (6) months." The pertinent portion of section 109 is subdivision (c) which, at the times herein involved, read as follows:

"The candidate thus appointed shall be employed on probation for a period to be fixed by said rules, not exceeding six months, except that a longer period, not exceeding twelve months, may be fixed for management personnel, for those members of the Police Department appointed under civil service rules and regulations and sworn in, as provided by law, to perform the duties of regular police officers. . . . At or before the expiration of the probationary period, the appointing authority of the department or office in which the candidate is employed may terminate him upon assigning in writing the reasons therefor to said board. Unless he is thus terminated during the probationary period his appointment shall be deemed complete."

■ We conclude that petitioner was properly dismissed, in accordance with section 109 and that he was not entitled to a hearing under section 202. The two provisions must be read together and both must be given effect if reasonably possible. It is of the essence of a probationary employment that the employee is on trial for the probationary period. Observation of the employee during that period may disclose things about his character, personality and efficiency not discoverable at the time of original employment. Those matters involve more than objectively provable acts of misconduct. They involve matters requiring expert evaluation by the employee's superior and supervisory officers. The citizens of Los Angeles have determined, by section 202, that if a probationary police officer has not been found unsatisfactory until after his probationary period has passed he shall not thereafter be dismissed except for misconduct that is susceptible of proof at a hearing and that the penalty for acts so proven shall be determined by an independent agency—the board of rights. But the citizens have reserved, in section 109, the essentials of probationary evaluation and have left to the chief of police the right and power to weigh not only proven acts of misconduct but more subtle matters of character and judgment, and to act on his expertise in deciding whether the probationer should attain the secure status of a permanent employee.

## II

Relying on *Board of Regents* v. *Roth* (1972) 408 U.S. 564, 572 [33 L.Ed.2d 548, 558, 92 S.Ct. 2701], and similar cases, petitioner contends that, apart from the provisions of the city charter, he was entitled to a hearing because his "good name, reputation, honor and integrity" was damaged by his discharge. The contention is without merit. In *Codd* v. *Velger* (1977) 429 U.S. 624 [51 L.Ed.2d 92, 97 S.Ct. 882], the United States Supreme Court said (at pp. 627-628 [51 L.Ed.2d at pp. 96-97]):

"But the hearing required where a nontenured employee has been stigmatized in the course of a decision to terminate his employment is solely 'to provide the person an opportunity to clear his name.' If he does not challenge the substantial truth of the material in question, no hearing would afford a promise of achieving that result for him."

Petitioner has not denied the truth of the charge that he drove an automobile while intoxicated. That fact would follow him no matter how many hearings he was afforded.

## III

■  Finally, petitioner contends that the penalty of dismissal was so severe as to be an abuse of the chief's discretion. Petitioner points to the fact that his record shows a long list of commendations for his work as a police officer, to the fact that the driving occurred when he was not in uniform and off-duty, and to the fact that the record shows no pattern of alcoholism but only a single act of intoxication after a party promoted by the department at which liquor was freely served. It is clear from the deposition of Chief Davis that he did not take those matters into consideration but that he acted on the determination that even a single act of drunk driving by a police officer evidenced such bad judgment as to make him a poor risk for further police duties.

Petitioner cites to us cases involving permanent employees and cases where the employee involved had special statutory rights not herein involved. We do not find those cases persuasive. Petitioner was not dismissed for any exercise of his personal constitutional rights, nor out of any personal bias against him. The chief, relying on his professional expertise, exercised the discretion granted him by section 109 to determine whether to risk some additional evidence of poor judg-

ment—the next time while acting as a police officer. We cannot say that the chief abused his discretion in making that decision.[1]

The judgment is affirmed.

Files, P. J., concurred.

**JEFFERSON (Bernard), J.**—I dissent.

The majority rejects petitioner's contention that the penalty of dismissal was so severe as to constitute an abuse of discretion by the chief of police, the terminating officer. I consider the contention meritorious and sufficient to mandate a reversal of the judgment.

It is true that the petitioner was in the process of serving a 12-month term as a probationary officer. He had completed nine months of his probationary term. Section 109, subdivision (c), of the Los Angeles City Charter provides for termination of a probationary employee by the appointing authority during the term of probation "upon assigning in writing the reasons therefor." I am unable to interpret that section as giving the appointing authority an absolute, capricious, and arbitrary right to terminate a probationary employee during the probationary period.

I interpret section 109, subdivision (c), of the Los Angeles City Charter as requiring a good faith termination with an absence of purely arbitrary and capricious action. The majority's view is that probationary employees have, for all intents and purposes, practically no rights at all.

In view of my interpretation of charter provision section 109, subdivision (c), I find that the penalty of dismissal in the case at bench amounted to an abuse of discretion on the part of the chief of police in terminating petitioner. The majority discounts the undisputed facts that petitioner's employment record revealed a long list of commendations of his work as a police officer and the fact that the one incident of driving under the influence of alcohol occurred when he was not in uniform and was not on duty. The majority also dismisses as irrelevant the fact that the record shows no pattern of alcoholism, but only a single act of intoxication as a

---

[1]Of course, we do not hold that a probationary employee has no rights at all or that any reason whatsoever—such as race or sex—would be a valid ground of discharge.

result of a party which was *promoted by the police department* and at which intoxicating liquor was freely served.

The record establishes that the chief of police did not take any of these matters into consideration but acted solely on a determination that a *single* act of drunk driving by a probationary police officer, off duty, evidenced such bad judgment as to make him a poor risk for further police duties. I agree that driving while under the influence of alcoholic beverages is not to be condoned, but if such a *single* act is to be considered such an act of bad judgment as to constitute a valid reason for discharging a probationary officer in the face of an otherwise exemplary record during the probationary period, then any reason whatever, such as the race or sex of a probationary officer could, with equal validity, be deemed a valid exercise of discretion by the chief of police to terminate that officer as a poor risk for further police duties. The majority's disclaimer that its view does not go this far is simply unpersuasive.

There is no showing in this case at bench that petitioner deliberately drove his vehicle with full knowledge that he had imbibed too much alcohol to drive safely. Thus, an act of negligence such as is involved here cannot logically be deemed an act of bad judgment which connotes a deliberate choice of action. The conclusion that this single act of negligence makes petitioner a poor risk for further police duties is utterly untenable and indefensible.

Although the legal principles involved with permanent employees are not controlling, I consider the reasoning of such cases as persuasive in the matter before us.

In *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774], a permanent employee was dismissed for matters such as drinking during duty hours and exceeding the time allotted for lunch break and for having been seen in a bar on one occasion during working hours and with a drink in front of him. In holding that dismissal was excessive and constituted an abuse of discretion, the court remarked: "However, considering all relevant factors in light of the overriding concern for averting harm to the public service, we are of the opinion that the Board clearly abused its discretion in subjecting petitioner to the most severe punitive action possible for his misconduct. [¶] . . . the penalty of dismissal was clearly excessive and disproportionate to the misconduct on which it was based." (*Skelly, supra,* 15 Cal.3d 194, 219.)

Similar to *Skelly* is *Blake* v. *State Personnel Board* (1972) 25 Cal.App.3d 541 [102 Cal.Rptr. 50]. A discharge of a deputy labor commissioner was reversed because the penalty was deemed clearly excessive. *Blake* involved a single instance of misconduct which was far outweighed by an otherwise exemplary employment record.

The case at bench is not unlike the situations presented in *Skelly* and *Blake*. I readily concede that, under the charter provision involved in the case at bench, petitioner does not have the same rights as permanent employees involved in *Skelly* and *Blake*. But I cannot agree with the majority that the charter provision should be interpreted to hold that a probationary employee has no right against an arbitrary, capricious, and unreasonable ground of termination.

In my view, petitioner's case is *not* one on which reasonable minds may differ as to whether the basis of termination was a reasonable exercise of discretion.

I would reverse the judgment from which the appeal has been taken.

A petition for a rehearing was denied June 5, 1978. Jefferson, J., was of the opinion that the petition should be granted. Appellant's petition for a hearing by the Supreme Court was denied July 13, 1978. Bird, C. J., and Newman, J., were of the opinion that the petition should be granted.