[Civ. No. 43013. First Dist., Div. One. Nov. 2, 1979.]

JAMES LUBEY et al., Plaintiffs and Respondents, v.
CITY AND COUNTY OF SAN FRANCISCO et al., Defendants and
Appellants.

COUNSEL

George Agnost, City Attorney, Rick Murphy and Michael C. Killelea, Deputy City Attorneys, and Thomas C. H. Mills for Defendants and Appellants.

Cotchett, Hutchinson & Dyer, Cotchett, Dyer & Illston, Joseph W. Cotchett, Girard Fisher and Charles A. Dyer for Plaintiffs and Respondents.

OPINION

**ELKINGTON, J.**—Respondents James Lubey and George Hood were probationary members of the uniformed ranks of the Police Department of the City and County of San Francisco. A citizen made unsworn charges of misconduct against each of them. The matter was referred to the police department's internal affairs bureau and an investigation was started. The officers were interrogated and thereafter furnished with an unverified complaint, or statement of the charges. A memorandum reciting those and other charges not made known to the officers, was then forwarded by the internal affairs bureau to the police chief or police commission, with a recommendation that the officers be tried for misconduct. The contents of the memorandum were never made known to the officers.

About two and a half months after the investigation's start, upon a few hours' notice, the probationary officers were summoned to the police chief's office. They were told "that he intended to dismiss [them] and that the purpose of the meeting was to provide [them with] the opportunity to address the charges against them to give reasons why they should not be terminated." At the meeting's close the officers were handed written notices of termination of employment, effective that day, "for *misconduct* on the charges made...." (Italics added.) The termination notices had been prepared and signed prior to the meeting.

The complaining citizen was not present at the meeting, and the officers were not shown the evidence against them. As later found by the superior court, they were not permitted to call and examine witnesses, and they did not have the chance to perform an independent investigation or to present evidence. Nor had they been given prior notice of all of the charges or of the purpose of the meeting. As to such of the charges of which they had been informed, the officers have generally denied them.

Two months after termination of their employment the officers were advised by the city's civil service commission that they were entitled to "no future employment with the City and County of San Francisco." And as found by the superior court, by virtue of the charges and consequent job terminations, "it is difficult or impossible for them to be employed as police officers anywhere."

Thereafter by the instant action against the city, its police chief and others (hereafter sometimes collectively, the City), the officers prayed that they be returned to their employment, that the police chief be ordered "to set aside his decision and do all things necessary to correct the circumstances complained of herein" and that "all back wages and benefits be awarded" them.

Following a trial the superior court's judgment effectively granted, and implemented, the relief sought.

The City has appealed from the judgment.

■ We choose first to consider the appellate issue described by the City as: "Whether the provisions of San Francisco Charter *Section 8.340 specifically dealing with the discipline of probationary employ-*

*ees* of the City and County of San Francisco prevails over *Section 8.343 dealing with the termination of police officers in general."* (Italics added.)

Charter section 8.340 provides the procedure for "termination" of a probationary police officer's employment. It permits the City's police chief to terminate such employment simply by giving the officer, and the civil service commission, written notice of such termination specifying the reasons therefor.

On the other hand, charter section 8.343 states a procedure for *disciplining* "members" of the City's police department for breach of duty or *"misconduct."* It sets forth adequate procedural *due process* requirements, and the permitted sanctions are reprimand, fine, suspension, or *dismissal.*

It will be seen that the City has mischaracterized the instant issue. Section 8.340 deals with the "termination," not "discipline," of probationary employees. Section 8.343 is concerned with the "discipline" and "dismissal," not "termination," of police officers generally. Here, as noted, the probationary police officers were expressly *"terminated"* for *"misconduct."*

A review of the constitutional principles of due process, claimed by the officers to be applicable in the circumstances of their case, becomes appropriate.

■ It is settled law that a probationary (or nontenured) civil service employee, at least ordinarily, may be dismissed without a hearing or judicially cognizable good cause. (*Perry* v. *Sindermann,* 408 U.S. 593, 596 [33 L.Ed.2d 570, 576, 92 S.Ct. 2694]; *Board of Regents* v. *Roth,* 408 U.S. 564, 578 [33 L.Ed.2d 548, 561, 92 S.Ct. 2701]; *Bogacki* v. *Board of Supervisors,* 5 Cal.3d 771, 782 [97 Cal.Rptr.657, 489 P. 657, 489 P.2d 537] [cert. den., 405 U.S. 1030 (31 L.Ed.2d 488, 92 S.Ct. 1301)]; *McNeill* v. *Butz* (4th Cir. 1973) 480 F.2d 314, 319; *Kestler* v. *City of Los Angeles,* 81 Cal.App.3d 62, 65 [146 Cal.Rptr. 61]; *Healdsburg Police Officers Assn.* v. *City of Healdsburg,* 57 Cal.App.3d 444, 450 [129 Cal.Rptr. 216]; *Daniel* v. *Porter* (W.D.N.C. 1975) 391 F.Supp. 1006.) Such a dismissal does not deprive the employee of a vested, or property, right. (*Codd* v. *Velger,* 429 U.S. 624, 628 [51 L.Ed.2d 92, 97, 97 S.Ct. 882]; *Board of Regents* v. *Roth, supra,* pp. 578-579 [33 L.Ed.2d pp. 561-562]; *Bogacki* v. *Board of Supervisors, supra,* pp. 782-783; *McNeill* v. *Butz, supra,* p. 319.) A public agency

may constitutionally *"employ* persons subject to removal at *its* pleasure" (*Bogacki* v. *Board of Supervisors, supra,* p. 782), for "'[u]nquestionably, a broad discretion reposes in governmental agencies to determine which [probationary] employees they will retain'" (*id.,* p. 783).

But there is an important exception to this rule, which is founded upon the Fourteenth Amendment. It arises where there is a deprival of the "liberty"guaranteed all persons by that amendment's due process clause. The exception will be applied where the probationary employee's job termination, or dismissal, is based on charges of misconduct which "stigmatize" his reputation, or "seriously impair" his opportunity to earn a living (*Paul* v. *Davis,* 424 U.S. 693, 702 [47 L.Ed.2d 405, 414, 96 S.Ct. 1155]), or which "might seriously damage his standing or associations in his community" (*Board of Regents* v. *Roth, supra,* 408 U.S. 564, 573 [33 L.Ed.2d 548, 558]; and to the same effect see *McNeill* v. *Butz, supra,* 408 F.2d 314, 319; *Daniel* v. *Porter, supra,* 391 F.Supp. 1006, 1010).[1]

Where there is such a deprival of a "liberty interest" the employee's "remedy mandated by the Due Process Clause of the Fourteenth Amendment is 'an opportunity to refute the charge' [and] 'to clear his name.'" (*Codd* v. *Velger, supra,* 429 U.S. 624, 627 [51 L.Ed.2d 92, 96].) He must be afforded ""notice and opportunity for hearing appropriate to the nature of the case' *before* the termination becomes effective."" (*Board of Regents* v. *Roth, supra,* 408 U.S. 564, 570, fn. 7 [33 L.Ed.2d 548, 556].)[2]

 Here, as noted, charges of *misconduct* were levied against the two probationary police officers. Without even pretense of due process, or "notice and opportunity for hearing appropriate to the nature of the

---

[1]Another exception to the rule lies where the public employer's termination of the employment "was motivated by a desire to curtail or to penalize the exercise of an employee's constitutionally protected rights,. . ." (*Bishop* v. *Wood,* 426 U.S. 341, 350 [48 L.Ed.2d 684, 693, 96 S.Ct. 2074]; and see *Perry* v. *Sindermann, supra,* 408 U.S. 593, 596-597 [33 L.Ed.2d 570, 576-577]; *Bogacki* v. *Board of Supervisors, supra,* 5 Cal.3d 771, 778-779; *Healdsburg Police Officers Assn.* v. *City of Healdsburg, supra,* 57 Cal. App.3d 444, 450.) Such an issue is absent from the case before us.

[2]Where the probationary employee at no time makes denial of the charges of misconduct, his contention of deprival of due process will be rejected. (See *Codd* v. *Velger, supra,* 429 U.S. 624, 627-629 [51 L.Ed.2d 92, 96-98]; *Kestler* v. *City of Los Angeles, supra,* 81 Cal.App.3d 62, 66.) (Here, as noted above, the charges were denied by the officers.) And ordinarily, the "'same conclusion applies to the discharge of a [probationary or otherwise nontenured] public employee. . .when there is no public disclosure of the reasons for the discharge.'" (*Board of Curators, Univ. of Mo.* v. *Horowitz,* 435 U.S. 78, 84 [55 L.Ed.2d 124, 131, 98 S.Ct. 948].)

case," or opportunity "to refute the charges" or "to clear their names," the officers' employment was terminated "for misconduct on the charges made..." It must fairly be said that their reputations were thereby "stigmatized," their chances of future employment in their chosen field, and elsewhere, "seriously impaired," and their standing in the community "seriously damaged."

We are unpersuaded by the City's arguments that the police personnel files were confidential, that Officers Lubey and Hood have by their action now brought upon themselves the stigmatizing notoriety of which they complain, and that despite the civil service commission's letter denying them "future employment" by the City, they are as a matter of law permitted to compete for such employment. It is unrealistic to assume that a citizen's charges of misconduct against police officers, investigated by the police department, found true by the police chief, and resulting in termination the reasons for which had been communicated to the civil service commission, have nevertheless somehow retained their confidentiality. And we must also realistically assume that in the officers' future applications for employment, inquiry will be made of their prior job experience, and then into the reasons for their termination as policemen.

We conclude therefore that, however described, the "termination" or "dismissal" of Probationary Officers Lubey and Hood did not comport with Fourteenth Amendment requirements.

We are brought more closely to the instant issue, i.e., whether charter section 8.340, or charter section 8.343, was apposite to the proceedings leading to the probationary officers' separation from the police department.

Manifestly, an ambiguity appears.

■ Statutes and charter provisions such as those before us should be read and construed as a whole in harmony with other statutes relating to the same general subject. (*Associated Home Builders etc., Inc.* v. *City of Livermore,* 18 Cal.3d 582, 596 [135 Cal.Rptr. 41, 557 P.2d 473, 92 A.L.R.3d 1038]; *Select Base Materials* v. *Board of Equal.,* 51 Cal.2d 640, 645 [335 P.2d 672]; *In re Marquez,* 3 Cal.2d 625, 628 [45 P.2d 342].)

■ And where the terms of a statute (or charter provision) "'are by fair and reasonable interpretation capable of a meaning consistent with

the requirements of the Constitution, the statute will be given that meaning, rather than another in conflict with the Constitution.'" (*San Francisco Unified School Dist. v. Johnson,* 3 Cal.3d 937, 948 [92 Cal.Rptr. 309, 479 P.2d 669] [cert. den., 401 U.S. 1012 (28 L.Ed.2d 549, 91 S.Ct. 1266)]; *County of Los Angeles v. Legg,* 5 Cal.2d 349, 353 [55 P.2d 206]; see also *Baldwin v. City of San Diego,* 195 Cal.App.2d 236, 240-241 [15 Cal.Rptr. 576].) "'The Constitution and the statute are to be read together,...'" (*County of Madera v. Gendron,* 59 Cal.2d 798, 801 [31 Cal.Rptr. 302, 382 P.2d 342, 6 A.L.R.3d 555].)

Applying the foregoing criteria, we find an intent and purpose that charter section 8.343, and not charter section 8.340, applies in cases where either a *probationary or permanent* police officer of the City is disciplined on charges of misconduct, and subject to dismissal or other punishment provided by that section.

It follows that the action of the City's police chief dismissing Probationary Officers Lubey and Hood "for misconduct on the charges made" without due process as provided by charter section 8.343 was in violation of the City's charter, *and* the Fourteenth Amendment.[3] It will accordingly be set aside.

The probationary officers have also contended that their termination was contrary to a "Memorandum of Understanding" entered into by the San Francisco Police Officers Association, their "recognized employee organization," and certain of the City's officials, pursuant to the Meyers-Milias-Brown Act (Gov. Code, § 3500 et seq.).

But we observe that the subject memorandum of understanding provides: "The disciplinary procedure provided for in *Section 8.343 of the San Francisco Charter* shall be the exclusive procedure utilized...for action taken by the [Police] Department against sworn personnel of the Department who are guilty of an offense, or violate the rules and regulations of the Department." (Italics added.) Compliance with section 8.343's due process procedures thus not only satisfies both state and federal constitutional due process obligations owed the subject probationary police officers, but also the requirements of the memorandum of understanding. We accordingly need not consider the City's further argument urging the invalidity of that agreement.

Our remaining problem concerns the final disposition of the probationary police officers' action. We are aided by *Board of Regents v. Roth, supra,* 408 U.S. 564, 570, footnote 7 [33 L.Ed.2d 548, 556], by

---

[3] We find the due process requirements of charter section 8.343 to be substantially in accord with federal and state constitutional demands.

the recent decision of *Ofsevit* v. *Trustees of Cal. State University & Colleges,* 21 Cal.3d 763, 775-778 [148 Cal.Rptr. 1, 582 P.2d 88], and by the cases there relied upon, i.e., *NLRB* v. *Rutter-Rex Mfg. Co.,* 396 U.S. 258, 262-266 [24 L.Ed.2d 405, 410-412, 90 S.Ct. 417]; *Stolberg* v. *Members of Bd. of Tr. for State Col. of Conn.* (2d Cir. 1973) 474 F.2d 485, 488-491; *Johnson* v. *Butler* (W.D. Va. 1977) 433 F.Supp. 531, 537. Although of differing factual contexts, we find this authority to be reasonably applicable here.

We declare that Probationary Officers Lubey and Hood were entitled to the due process protection of the City's charter section 8.343 *before* their unlawful termination. (408 U.S., p. 570, fn. 7 [33 L.Ed.2d p. 556].) Upon the filing of our remittitur they will be entitled to reinstatement as probationary police officers, and *"to payment of damages in the amount of lost benefits and net loss of salary from the date of the improper* [terminations], *to the date of* [their] *reinstatement."* (21 Cal.3d, p. 775.) The "net loss of salary" will cover the lost salary, "less whatever sums were earned...during that period...." (433 F.Supp., p. 537; and see 396 U.S., p. 263 [24 L.Ed.2d, p. 410], and 474 F.2d, p. 488.) The probationary officers' reinstatement will be as of the date of their termination, and subject to the remaining probationary periods as then existed. Their right of reinstatement in no way precludes the City's police chief from otherwise *properly* inquiring into their present qualifications or ability to perform as police officers, or from ordering their termination if it is properly determined that there are grounds therefor under charter section 8.340. (21 Cal.3d, p. 776, fn. 13.) In making such determination, if any, the police chief will not consider the proceedings leading to the officers' earlier termination or the related "findings." If the officers are not so terminated according to section 8.340 the police chief, and in any event the officers or either of them, may within a reasonable time elect to bring about an appropriate resolution of the subject misconduct charges according to the requirements of section 8.343.

The judgment of the superior court will be modified so as to remove any inconsistency with what we have herein said and held; as so modified, the judgment is affirmed. Respondents will recover their costs of appeal.

Racanelli, P. J., and Newsom, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied December 27, 1979. Manuel, J., was of the opinion that the petition should be granted.