Diane **DETOY**, Plaintiff,

v.

**CITY AND COUNTY OF SAN FRANCISCO, et al.,**
**Defendants.**

No. C 99–3072 CRB(JL).

United States District Court,
N.D. California.

July 19, 2000.

**364**

Ronald H. Wecht, Jeffrey P. Holl, Khaldoun A. Baghdadi, Walkup Melodia Kelly & Echeverria, San Francisco, CA, for Plaintiff.

George E. Akwo, Joanne Hoeper, Maxwell Peltz, City Attorney's Office—Fox Plaza, City and County of San Francisco, San Francisco, CA, State Board of Control, Revenue Recovery and Compliance Division, Sacramento, CA, for Defendants.

## INTRODUCTION

LARSON, United States Magistrate Judge.

This court heard argument concerning the parties' outstanding discovery disputes on July 19, 2000. Ronald Wecht appeared on behalf of Plaintiff. Maxwell Peltz appeared on behalf of Defendants. The motions were: 1) Plaintiff's motion to compel Defendants to designate witnesses prepared to testify regarding Sergeant Breslin's training and disciplinary history, 2) Defendants' motion for protective order that witnesses not be required to answer questions to which Defendants object as outside the scope of the 30(b)(6) designation, 3) Defendants' motion to compel deposition of Plaintiff's attorney Frank D'Alfonsi, 4) Plaintiff's motion to compel Defendants to obtain the investigative file of the Office of Citizen Complaints ("OCC") into the shooting of Sheila Detoy and make it available to Plaintiff, and 5) Defendants' objection to the notice of deposition of San Francisco Chief of Police Fred Lau.

## FACTUAL AND PROCEDURAL BACKGROUND

This is a suit for violation of 42 U.S.C. § 1983, after an incident in which Plaintiff's daughter, Sheila Detoy, was allegedly shot and killed by a San Francisco police officer, Sergeant Gregory Breslin. The case was originally filed in San Francisco Superior Court; it was removed by Defendants on June 24, 1999. The District Court (Hon. Charles R. Breyer) referred all discovery matters to this court in an order filed April 11, 2000. On May 15, this court ordered Defendants to produce to Plaintiff documents submitted for in camera review involving complaints against defendant officer Gregory Breslin for alleged use of excessive force. On June 13, the hearing date on Defendants' motion for summary judgment was continued to August 17, 2000.

## THE MOTIONS

**Designation of 30(b)(6) Witnesses**

Plaintiff rejects three of Defendants' designated witnesses as not competent to testify under Rule 30(b)(6): SFPD Lieutenant Richard Perry, who was designated to testify concerning Sergeant Breslin's training history, SFPD Captain Antonio Parra, designated to testify concerning Sergeant Breslin's disciplinary history, and Commander Frank

Bruce, designated to testify regarding SFPD policies, practices, guidelines and procedures over the last ten years concerning the use of deadly force.

Lieutenant Perry testified that he was not aware of the details of the training Sergeant Breslin received on the use of firearms when directed at moving vehicles. (Sheila Detoy was shot while riding as a passenger in a moving vehicle.)

Captain Parra testified that he was unprepared to testify concerning any of the factual circumstances giving rise to discipline against Sergeant Breslin, such as when specific incidents occurred, or the circumstances surrounding any of the incidents, or whether Sergeant Breslin had served either of two suspensions ordered against him. Nor was Captain Parra able to say whether Sergeant Breslin received any counseling or action under the Early Warning System (a program to identify officers who receive frequent complaints that they use unnecessary or excessive force).

Commander Bruce was instructed not to answer questions Defendants considered outside the scope of the designation or involving hypotheticals "too analogous" to the circumstances giving rise to this action.

Plaintiff's counsel suspended the depositions and requested that Defendants designate witnesses who were prepared to testify regarding Sergeant Breslin's training and disciplinary history, and permit Commander Bruce[1] to testify regarding whether certain factual circumstances would be inside or outside Department policy and procedures.

### ANALYSIS

■ These categories of information are essential to Plaintiff's causes of action under 42 U.S.C. § 1983 and *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Plaintiff must show that the Police Department and the City engaged in a pattern and practice of permitting or ratifying

unconstitutional use of force by police officers in order to establish the liability of the Police Department and the City for the officers' conduct. Defendants are obligated to produce witnesses to testify regarding Sergeant Breslin's training and disciplinary history, which are relevant to the Department's pattern and practice with respect to the use of force by police officers, and specifically with respect to this officer. Defendants shall ensure that such witnesses are adequately prepared to testify, that is, that each witness has reviewed all pertinent documents and is familiar with them. At the depositions, Plaintiff's counsel shall permit the witnesses to review files and documents during their depositions if necessary to refresh their recollection. If witnesses[2] other than those initially designated are available to testify regarding discrete aspects of the defendant officer's training history, those witnesses shall be made available for deposition as 30(b)(6) witnesses whose testimony is binding on the Department and the City. With respect to Commander Bruce, designated under 30(b)(6) to testify regarding the Police Department's policy with respect to the use of deadly force, any further deposition shall be limited to two hours.

### Scope of Deposition under FRCP 30(b)(6)

Plaintiff moves to compel answers to questions at deposition. Defendants object to the *scope of questioning of witnesses pursuant to* Rule 30(b)(6), Federal Rules of Civil Procedure, and request a protective order limiting questioning to the subject matter of the designation in the deposition notice. In the alternative, Defendants suggest that Plaintiff adjourn the depositions of 30(b)(6) witnesses and re-open them in order to ask questions outside the scope of the designation.

■ Generally, evidence objected to shall be taken subject to objections. FRCP 30(c). As a rule, instructions not to answer questions at a deposition are improper. *Paparelli v. Prudential Ins. Co. of America*,

---

1. The court discusses the scope of 30(b)(6) depositions in the next section.

2. At the hearing, Captain Springer and Officer Parra, brother of Antonio Parra, were identified,

as knowledgeable about training on non-deadly force and vehicle stops, respectively. Officer McKee was also identified as knowledgeable on training in the use of non-deadly force.

108 F.R.D. 727, 730, (D.Mass.1985), *citing International Union of Elec., Radio and Mach. Workers, AFL–CIO v. Westinghouse Elec. Corp.*, 91 F.R.D. 277 (D.D.C.1981). The only exception to Rule 30(c) is where serious harm would be caused. *Id.* An answer to a deposition question revealing privileged material or other confidential material is considered to cause some serious harm. *Id.* at 731. A party may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation on evidence directed by the court, or to present a motion under paragraph (3) (that the deposition is being conducted in bad faith or to annoy, embarrass or oppress the deponent or party.) FRCP 30(d)(3).

■■■ The case law is unsettled whether witness testimony at a 30(b)(6) deposition is limited to the subject matter of the designation in the notice. The court in *Paparelli* strictly construed the scope of such a deposition.

> Accordingly, I rule that if a party opts to employ the procedures of Rule 30(b)(6), F.R.Civ.P., to depose the representative of a corporation, that party must confine the examination to the matters stated "with reasonable particularity" which are contained in the Notice of Deposition.

*Id.* at 730. At the same time, the court held that the defending party should not instruct the witness not to answer, but could adjourn the deposition to seek a protective order. *Id.* at 731.

A deposing party is thus left to choose between giving up its right to ask questions outside the designation or re-opening the deposition at a different time under Rule 26(b)(1). This process is complicated by the limitation on depositions of Federal Rule of Civil Procedure 30(a)(2)(A) of ten per party if local rules or court orders do not extend the allowable number.

The decision in *Paparelli* appears to ignore the liberal discovery requirements of Rule 26(b)(1), which states that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . ." Limiting the scope of a 30(b)(6) deposition to what is noticed in the deposition

subpoena frustrates the objectives of Rule 26(b)(1) whenever a deposing party seeks information relevant to the subject matter of the pending litigation that was not specified. *Paparelli* forecloses the deposing party from two of the most significant benefits of the deposition as a tool in the discovery process: (1) the ability to explore previously undisclosed areas of a case that are revealed by a deponent during deposition questioning; and (2) the ability to observe a deponent's response to an unexpected question.

The court in *King v. Pratt & Whitney* provided an accurate and more logical interpretation of Rule 30(b)(6). While the court in *Paparelli* interpreted the "reasonable particularity" requirement of the Rule as limiting the scope of the deposition, the court in *King* interpreted the requirement as ensuring that the party produces a witness prepared to testify. This renders the description of the scope of the deposition in the notice as the minimum about which the witness must be prepared to testify, not the maximum. *King v. Pratt & Whitney, a Div. of United Technologies Corp.*, 161 F.R.D. 475 (S.D.Fla.1995).

The district court in *King* disagreed with the court's decision in *Paparelli* and reasoned as follows:

1) Rule 30(b)(6) obligates the responding [entity] to provide a witness who can answer questions regarding the subject matter listed in the notice.

2) If the designated deponent cannot answer those questions, then the [entity] has failed to comply with its Rule 30(b)(6) obligations and may be subject to sanctions, etc. The [entity] has an affirmative duty to produce a representative who can answer questions that are both within the scope of the matters described in the notice and are "known or reasonably available" to the corporation. Rule 30(b)(6) delineates this affirmative duty.

3) If the examining party asks questions outside the scope of the matters described in the notice, the general deposition rules govern (i.e. Fed.R.Civ.P. 26(b)(1)), so that relevant questions may be asked and no special protection is conferred on a depo-

nent by virtue of the fact that the deposition was noticed under 30(b)(6).

4) However, if the deponent does not know the answer to questions outside the scope of the matters described in the notice, then that is the examining party's problem.

*Id.* at 476.

The court concluded that Rule 30(b)(6) cannot be used to limit what is asked of a designated witness at deposition. *Id.* Once the witness satisfies the minimum standard, the scope of the deposition is determined solely by relevance under Rule 26, that is, that the evidence sought may lead to the discovery of admissible evidence. *Overseas Private Investment Corp. v. Mandelbaum,* 185 F.R.D. 67 (D.D.C.1999) (once a corporate defendant produces a witness capable of responding to questions in 30(b)(6) notice, the scope of inquiry is limited only by Rule 26(b)(1).) *Id.* at 68.

Plaintiff objects to Defendants' instructions to witnesses not to answer questions which Defendants contend are outside the scope of the designation under Rule 30(b)(6). The rule requires that the scope of the deposition be stated with "reasonable particularity."

The "reasonable particularity" requirement as interpreted in *King* facilitates discovery as the Advisory Committee intended, instead of hampering discovery as *Paparelli* does. This court agrees with the rationale of the court in the *King* case. At the same time, the court recognizes that defending counsel may fear ambush, and that the designating entity could be bound by the witness's answers or that the answers could be construed as admissions by the designating entity, or that the questions may enter into territory where the witness is unprepared.

The option to adjourn the 30(b)(6) deposition and demand that the deposition be re-noticed, for the witness to appear on his or her own behalf seems artificial and wasteful of both the parties' resources and the witness's time. Presumably, if the witness is capable of testifying on behalf of the designated entity, the witness is also capable of testifying as an individual, at the same deposition. Nor should one witness count as two

depositions for purposes of the Local Rules' limit on the number of depositions to be taken by each party. Such a rule would encourage defending counsel to take a hard line and force an opponent to expend its deposition allotment.

■ If Defendants have objections to either questions outside the scope of the 30(b)(6) designation or a question whether certain conduct falls inside or outside Departmental policy, counsel shall state the objection on the record and the witness shall answer the question, to the best of the witness's ability. Counsel shall refrain from instructing a witness not to answer, except as provided in Rule 30(d)(1), Fed.R.Civ.P., to preserve a privilege, to enforce a limitation on evidence directed by the court, or to present a motion under paragraph (3), that the deposition is being conducted in bad faith or in such a way as unreasonably to annoy, embarrass or oppress the deponent or a party.

■ Counsel may note on the record that answers to questions beyond the scope of the Rule 30(b)(6) designation are not intended as the answers of the designating party and do not bind the designating party. Prior to trial, counsel may request from the trial judge jury instructions that such answers were merely the answers or opinions of individual fact witnesses, not admissions of the party. *See generally,* 26 Colo. Law. *87,* 90, Colorado Lawyer June 1997 *Specialty Law Column: Questions Beyond the Scope: Defending Against the Fed.R.Civ.P. 30(b)(6) Sneak Attack,* Rodger L. Wilson, Steve C. Posner. Defendants shall designate witnesses to testify as requested by Plaintiff.

**Deposition of Plaintiff's Attorney, Frank D'Alfonsi**

Defendants seek to depose Frank D'Alfonsi regarding two areas: 1) the relationship between Plaintiff and her daughter, as part of its discovery into potential damages, and 2) what happened to the vehicle in which Sheila Detoy was riding when she was shot. Mr. D'Alfonsi is a family friend, as well as the family attorney, and checked on Plaintiff's two daughters, Sheila and Christine, when she was out of town. Although Mr.

D'Alfonsi is a co-counsel on the case at bar, Plaintiff's counsel who appeared at the hearing on this motion conceded that Mr. D'Alfonsi would not have the "laboring oar" in the case. Mr. D'Alfonsi took possession of the vehicle in which Sheila Detoy was shot when it was released by the Police Department, and Defendants want to ask him questions regarding what was done to the car after it was released to him and before the Department re-took possession as part of its investigation. This is relevant to any physical evidence which might have been in the car.

## ANALYSIS

■ These two areas of inquiry are relevant, and would not intrude on any privileged attorney-client communications or work product. Defendants' motion to depose Mr. D'Alfonsi in these two areas is granted.

## OCC Investigative File .

Defendants' counsel stated at the hearing that he is attempting to obtain the file, but that the OCC is withholding it to protect its ongoing investigation. Plaintiff in particular wants the tape-recorded interviews with the officers who were witnesses to the shooting. Defendants caution that these interviews were contemporaneous with the depositions of these officers and probably contain little that is new. Plaintiff would prefer to assess this.

## ANALYSIS

■ The OCC understandably wishes to protect the confidentiality of witnesses and participants in an ongoing investigation, to ensure the integrity of that investigation. At the same time, the accounts of the officers who were present when Sheila Detoy was killed are relevant to the case at bar. If the OCC has not voluntarily released the file by August 31, Defendants shall file a motion to compel in order to obtain the file and make it available to Plaintiff.

---

3. There is no explanation for the two-and-a-half year lag between the incident and the disposition.

4. In 1991, Breslin beat and kicked a prisoner in the back of a patrol wagon. He later lied to officers investigating the incident. Charges

## Deposition of San Francisco Chief of Police Fred Lau

Defendants object to Plaintiff's notice of deposition of San Francisco Chief of Police Fred Lau. Plaintiff seeks to depose Chief Lau regarding his intervention in a prior disciplinary action against Sergeant Breslin. The charge resulted from an incident in May 1994, when Breslin was accused of punching a young woman defendant who was at the time handcuffed to a bench in the Vice Crimes Office at the Hall of Justice. The specific charge was using unnecessary force. (Ex. B to Wecht Declaration). By letter dated January 16, 1997,[3] Chief Lau intervened, removed the matter from the jurisdiction of the Police Commission, and handled it as an administrative complaint of interference with another officer's prisoner, to be decided within the confines of Chief Lau's office. (See Exs. B and C to Joint Statement re Discovery Dispute over Deposition of Police Chief Fred Lau, filed May 26, 2000).

Chief Lau ordered that Breslin be suspended for two days, that the suspension be held in abeyance for one year and not served if Breslin was not involved in any other incidents, and that the suspension would not be considered in any promotional process. *Id.* Plaintiff contends that no one else can competently explain Chief Lau's reasoning which led him to request that the charges against Breslin before the Police Commission be withdrawn.

Chief Lau has direct and firsthand knowledge of circumstances underlying a previous instance of discipline for alleged use of unnecessary force by Breslin. He chose to become personally involved and took steps to impose an insignificant punishment for the use of unnecessary force by a police officer who had other sustained complaints against him,[4] a year-and-a-half before the same officer allegedly shot and killed Sheila Detoy.

---

against him were sustained by the Police Commission and he was suspended for 20 days. (See Ex. C to Wecht Declaration, Pltf's Supp. Points & Authorities filed July 12, 2000 at page 3, line 1).

Defendants object that Chief Lau is a high public official, with many demands on his time, and that absent a showing of both compelling need and exceptional circumstances, Plaintiff should not be permitted to take his deposition. Defendants observe that the previous incident took place more than four years before Sheila Detoy's death and did not involve serious bodily injury, use of deadly force or use of a firearm.

## ANALYSIS

 The need for controlling the use of subpoenas against high government officials was recognized by the Supreme Court in *U.S. v. Morgan*, 313 U.S. 409, 421–22, 61 S.Ct. 999, 85 L.Ed. 1429 (1941). In that case involving a subpoena directed to the Secretary of Agriculture, the Court stated that routine examination of high officials concerning the reasons for their official actions would undermine the integrity of the administrative process. *Id.* at 422, 61 S.Ct. 999. Other courts have reasoned similarly. Because "[h]igh ranking government officials have greater duties and time constraints than other witnesses ... [they] 'should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions.'" *In re United States (Kessler)*, 985 F.2d 510, 512 (11th Cir.1993) (per curiam) (*quoting Simplex Time Recorder Co. v. Secretary of Labor*, 766 F.2d 575, 586 (D.C.Cir.1985)). If other persons can provide the information sought, discovery will not be permitted against such an official. *Id.* at 513. Extraordinary circumstances must exist before the involuntary depositions of high government officials are permitted. *In re Office of Inspector General*, 933 F.2d 276 (5th Cir.1991) (top executive department officials should not, absent extraordinary circumstances, be called to testify regarding

their reasons for taking official actions.) *Id.* at 278.

In the case at bar, Plaintiff convincingly distinguishes the cases cited by Defendants. In those cases the high officials had no personal knowledge of the events or decisions at issue. Examples include the director of the Small Business Administration regarding loans to a corporation,[5] the Governor of California regarding crowding at San Quentin,[6] the Attorney General of California[7] regarding attorneys' fees to be awarded to the prevailing party in an action against the State Board of Pharmacy, a State Governor,[8] the Attorney General of the United States,[9] and the Commissioner of the Food and Drug Administration,[10] all about matters of which they had no personal knowledge.

A chief of police is not necessarily a high government official as in the cases cited by Defendants. Research by the court reveals several cases where police chiefs were deposed, without any special showing.

In an employment discrimination case, a police chief was deposed regarding the reasons for not hiring the plaintiff as a police officer, and the court affirmed the appropriateness of questions concerning discrepancies between his deposition and his testimony at trial. *Cotton v. City of Alameda*, 812 F.2d 1245, 1249 (9th Cir.1987).

Another case involved disciplinary actions against police officers. A police chief of a city much larger than San Francisco was deposed. *Kestler v. City of Los Angeles*, 81 Cal.App.3d 62, 146 Cal.Rptr. 61 (1978).

It is clear from the deposition of Chief Davis that he did not take those matters into consideration but that he acted on the determination that even a single act of drunk driving by a police officer evidenced

---

5. *Kyle Engineering Co. v. Kleppe*, 600 F.2d 226, 231 (9th Cir.1979).

6. *Deukmejian v. Superior Court*, 143 Cal.App.3d 632, 191 Cal.Rptr. 905 (1983).

7. *State Board of Pharmacy v. Superior Court*, 78 Cal.App.3d 641, 144 Cal.Rptr. 320 (1978).

8. *Sweeney v. Bond*, 669 F.2d 542 (8th Cir.1982), cert. denied sub nom.

9. *Civiletti v. Municipal Court*, 116 Cal.App.3d 105, 172 Cal.Rptr. 83 (1981).

10. *In re United States*, 985 F.2d 510 (11th Cir. 1993), cert. denied, 510 U.S. 989, 114 S.Ct. 545, 126 L.Ed.2d 447.

such bad judgment as to make him a poor risk for further police duties.

*Id.* at 66, 146 Cal.Rptr. 61

In a case in this district, the court found that the deposition testimony of the chief of police was proper evidence of the length and type of training which officers received in the use of deadly force. *York v. City of San Pablo*, 626 F.Supp. 34, 38 (N.D.Cal.1985).

 Accordingly, although this court doubts that plaintiff needs to meet the heightened standard of compelling need and extraordinary circumstances required to depose a high official, this court finds that the standard has been met. In the case at bar, Chief Lau took personal action to withdraw charges pending before the Police Commission against Gregory Breslin, the defendant accused of shooting and killing Sheila Detoy. The Chief imposed an administrative two-day suspension, which Breslin did not have to serve, which in effect put Breslin on probation for one year. The Chief permitted Breslin to wipe the slate clean if he had no complaints against him during that year, and protected his chances for promotion by specifying that the suspension not be considered. This is directly relevant to Plaintiff's claims that the Department failed to train or discipline Breslin regarding the use of force. Proof of such a failure could establish the City's liability under *Monell.* Defendants do not deny that it was unusual for the Chief to intervene personally in a disciplinary proceeding. Therefore, Plaintiff has shown both a compelling need for the information, and the extraordinary circumstances which would justify Chief Lau's deposition, if he were the type of government official in the cases cited by Defendants.

## CONCLUSION AND ORDER

For the above reasons, and good cause appearing,

IT IS HEREBY ORDERED that Plaintiff's motion to compel Defendants to designate witnesses prepared to testify regarding Sergeant Breslin's training and disciplinary history, and the Department's policies and procedures on the use of deadly force is granted. Witnesses shall be prepared, by reviewing files and documents prior to their depositions, and shall be permitted to refresh their recollection at deposition. If additional witnesses are identified as knowledgeable about specific aspects of the subject matter designated, their depositions may also be taken as 30(b)(6) witnesses, binding on the Department and the City.

IT IS FURTHER ORDERED that Defendants' motion for protective order that questions asked at an FRCP 30(b)(6) deposition be limited in scope to the subject matter of the designation in the notice is denied. An instruction not to answer on the basis that the question is beyond the scope of the 30(b)(6) designation, or that the witness is being asked to state a conclusion, is improper and the question shall be answered, subject to the objection. The court encourages counsel, when feasible, to arrive at an agreement beforehand regarding the general categories of questions inside and outside the scope of the designation and which answers will bind the designating entity and which will not. Counsel may then proceed with clear guidelines as to when the witness is testifying for the designating entity and when he is testifying for himself.

IT IS FURTHER ORDERED that Defendants may depose Frank D'Alfonsi on the subjects of (1) the family relationship of Plaintiff and her two daughters, and (2) what, if anything, happened to the vehicle in which Sheila Detoy was shot, between the time he received it from the Police Department, and the time the Department re-took possession, to the best of his knowledge.

IT IS FURTHER ORDERED that, if the Office of Citizens Complaints has not released the investigative file into the incident in question in this case by August 31, Defendants shall file a motion to compel to obtain the file, and provide it to Plaintiff.

IT IS FURTHER ORDERED that Defendants' objection to Plaintiff's notice of deposition of San Francisco Police Chief Fred Lau is overruled, and Defendants are ordered to assist in scheduling the deposition.