**FCC, doing business as First Growth Capital, a Florida Limited Liability Company, Plaintiff,**

v.

**MIZUHO MEDY CO. LTD., a Japanese Corporation; Benedict Zin, an individual and Akira Ogino, an individual, jointly and severally; and SSL Americas, Inc., a New Jersey Corporation, and Does 1 through 10, inclusive, Defendants.**

Civil No. 07cv189 MMA (NLS).

United States District Court, S.D. California.

June 15, 2009.

**680**

Anne Claire Manalili, Steven N. Kurtz, Levinson Arshonsky & Kurtz LLP, Sherman Oaks, CA, Avery Samet, Benjamin L. Felcher Leavitt, Bijan Amini, Bonnie A. Tucker, Kathleen E. Wright, Storch Amini & Munves, P.C., New York, NY, Michael W. Ullman, Ullman & Ullman, P.A., Boca Raton, FL, for Plaintiff.

Gregory P. Olson, Law Office of Gregory P. Olson, San Diego, CA, for Defendant Benedict Zin.

Michael S. Cryan, Arent Fox LLP, Los Angeles, CA, for Defendant SSL Americas, Inc.

### ORDER:

**(1) GRANTING SSL AMERICA'S MOTION TO COMPEL DEPOSITION OF FCC AND FOR SANCTIONS [Doc. No. 163]; and**

**(2) DENYING FCC'S CROSS MOTION FOR A PROTECTIVE ORDER AND REQUEST FOR SANCTIONS [Doc. Nos. 174, 176].**

NITA L. STORMES, United States Magistrate Judge.

Defendant SSL Americas, Inc. (SSL) filed a motion to compel the deposition of Jay Atkins, the corporate designee of plaintiff FCC (FCC). SSL also seeks monetary sanctions to cover the costs and reasonable attorney's fees incurred in trying to compel this deposition. FCC filed a cross-motion for a protective order to either limit the question-ing of Atkins, or to require SSL to issue a notice of deposition of Atkins in compliance with Federal Rule of Civil Procedure 30(b)(6).[1] FCC also seeks costs and fees from SSL with respect to its cross motion.

The court has reviewed all pleadings and papers filed with respect to the two motions. For the following reasons, the court **GRANTS** SSL's motion to compel and request for sanctions and **DENIES** FCC's cross motion for a protective order and request for sanctions.

### Relevant Facts.

Defendant Benedict Zin issued a Rule 30(b)(6) deposition notice for FCC. He listed these topics on the notice: (1) communications between Zin and FCC, (2) an alleged Guaranty of Validity of Accounts dated April 20, 2006 (the Guarantee), (3) negotiations, and (4) communications about the Guarantee. No other party served a joinder of notice or a cross-notice of deposition to FCC.

On April 14, 2009, FCC produced Jay Atkins for deposition as FCC's corporate designee. Counsel for SSL attended the deposition. Counsel for Zin examined Atkins for approximately three and a half hours. FCC objected to questions that went beyond the scope of the deposition notice. Notwithstanding those objections, Atkins responded to the questions.

Next, SSL sought to ask its own questions of Atkins. Before SSL asked any questions, counsel for FCC objected on the basis that SSL did not file a cross-designation or cross-notice of deposition. SSL insisted that the cross-examination proceed, and that FCC could state any of its objections on the record. FCC requested that SSL "either limit the questioning to matters within the scope of Zin's Depo. Notice, agree not to attempt to re-depose Atkins, or issue its own notice complying with FRCP 30(b)(6)." SSL attempted to begin the cross-examination. FCC instructed Atkins to not answer any questions and terminated the deposition.

### Meet and Confer Efforts.

The parties dispute whether they made adequate meet and confer efforts before SSL

---

1. Future references to "Rule(s)" will be to the Federal Rules of Civil Procedure.

filed the motion to compel. At the deposition SSL argued there is no basis to preclude a party from cross-examining a witness at a deposition, so SSL should be allowed to proceed with its cross-exam of Atkins. FCC countered that SSL must serve a deposition notice before cross-examining its corporate designee.

The parties continued their meet and confer efforts through letters. On April 16, 2009, FCC offered to produce Atkins on May 14, 2009 in San Diego for a seven-hour period. But it would do so only if SSL served a Rule 30(b)(6) notice of deposition that set forth with particularity the subject matter of the examination. SSL did not directly respond to the offer and maintained that FCC improperly terminated Atkins' original deposition and that its actions were sanctionable.

On April 21, 2009 SSL filed the motion to compel. FCC told SSL that the motion was premature because the parties had not finished their meet and confer efforts. SSL replied that it had made adequate meet and confer efforts as counsel discussed this issue both on and off the record at the deposition and then exchanged letters. Further meet and confer efforts continued up until the time FCC filed its opposition and cross-motion for a protective order.

*Analysis.*

SSL argues that cross-examination at a deposition is not limited by the scope of the matters listed in the deposition notice. It asserts that FCC should have noted its objections on the record and allowed the deposition to proceed. SSL argues that the only proper way for FCC to terminate the deposition would have been to immediately file a motion for a protective order.

FCC says it terminated the deposition because SSL "did not file a cross-designation or cross-notice" and it appeared to FCC that SSL was "going to go beyond the scope of th[e] deposition notice."[2] FCC also asserts that this is a unique situation where SSL, a non-noticing party, is trying to gain an unfair advantage by cross-examining Atkins on non-designated topics for the remaining time of

his deposition and then possibly seeking to re-depose Atkins for a further seven hours. Finally, FCC states that it had always intended to seek a protective order, but believed the parties would resolve the dispute with further meet and confer discussions.[3]

█ When a party receives a Rule 30(b)(6) deposition notice, it must designate a knowledgeable person to fully prepare and "unevasively answer questions about the designated subject matter." *Bd. of Trs. of the Leland Stanford Junior Univ. v. Tyco Int'l Ltd.*, 253 F.R.D. 524, 526 (C.D.Cal.2008) (internal quotations omitted). "[B]ecause Rule 30(b)(6) explicitly requires a company to have persons testify on its behalf *as to all matters reasonably available to it*, … the Rule 'implicitly requires persons to review all matters known or reasonably available to [the corporation] in preparation for the [Rule] 30(b)(6) deposition.'" *Id.* The deponent need not have personal knowledge of the designated subject matter. *Id.*

Regarding the examination and cross-examination of a witness in a deposition, Rule 30(c) states:

> (1) The examination and cross-examination of a deponent proceed as they would at trial under the Federal Rules of Evidence …
>
> (2) An objection at the time of the examination—whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition—must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).

Under Rule 30(d)(3), the only grounds to terminate or limit a deposition is if "it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party."

█ There is no formal requirement for a party seeking to cross-examine a deponent

---

**2.** Atkins Depo., p. 123–124, ll. 19–25 and 1–2.

**3.** Decl. of Anne Manalili p. 2, ¶ 6.

to serve a notice. *Spray Products, Inc. v. Strouse, Inc.*, 31 F.R.D. 211, 212 (E.D.Penn. 1962) (stating that another party may examine a deponent on issues not addressed in the direct examination without serving a prior notice of deposition). In a multi-party lawsuit, one party may notice the deposition and other parties may attend and cross-examine the deponent without also having to notice the deposition. *Smith v. Logansport Comm. School Corp.*, 139 F.R.D. 637, 642 (N.D.Ind. 1991) (similar to situation here, plaintiff's counsel and co-defendant's counsel could cross-examine the witness deposed by defendant).

There is a split of authority regarding whether Rule 30(b)(6) requires a party to confine cross-examination to matters stated in the notice of deposition. Some courts state that the scope of the cross-examination questions is not limited to the issues raised in direct examination. *Compare, id.* at 642 n. 1 (stating it would make "no sense" to require a cross-examining party to notice a deposition for matters outside the scope of the direct examination "in light of the liberal objectives of discovery"), *with Paparelli v. Prudential Ins. Co.*, 108 F.R.D. 727, 730 (D.Mass.1985) (holding that the party conducting cross examination "must confine the examination to the matters stated 'with reasonable particularity' which are contained in the Notice of Deposition"). A fellow district in this circuit rejected the *Paparelli* court's reasoning because it ignores the liberal discovery requirements and "frustrates the objectives [of discovery] when a deposing party seeks information relevant to the subject matter of the pending litigation that was not specified." *Detoy v. City and County of San Francisco*, 196 F.R.D. 362, 367 (N.D.Cal. 2000). The *Detoy* court explained:

> If the examining party asks questions outside the scope of the matters described in the notice, the general deposition rules govern, so that relevant questions may be asked and no special protection is conferred on a deponent by virtue of the fact that the deposition was noticed under 30(b)(6) ... Rule 30(b)(6) cannot be used to limit what is asked of a designated witness at deposition.

*Id.* at 366–367 (adopting rationale as quoted in *King v. Pratt & Whitney, a Div. of United Technologies Corp.*, 161 F.R.D. 475 (S.D.Fla. 1995)).

Here, FCC objected to SSL's failure to join in the notice of deposition for its corporate designee and intent to cross-examine the deponent on issues outside of the notice. On those bases, it terminated the deposition. This court finds that neither basis constitutes a legitimate ground upon which to terminate a deposition. Termination was not necessary to protect the witness because SSL was not—as FCC argues—attempting to conduct the deposition in bad faith or with intent to unreasonably annoy, embarrass or oppress the deponent. Rather, SSL was following the Rules and had a right to cross-examine Atkins without prior notice and on matters not identified in the notice of deposition. As FCC's corporate designee, Atkins had a duty under Rule 30(b)(6) to "review all matters known or reasonably available to [the corporation] in preparation for the deposition." SSL's demand to conduct the cross-examination was reasonable and sanctioned by the Rules.

The court is not persuaded by FCC's argument of unfair advantage. FCC argues it is unfair to allow another defendant to bear the burden and expense of noticing a deposition, and then allow the non-noticing defendant the opportunity to ask questions beyond the scope of the notice and also have the ability to depose the witness a second time. By allowing this non-noticed cross-examination, FCC fears that SSL will attempt to bind FCC to Atkins's answers or that SSL may make allegations of inconsistent testimony if it deposes Atkins in a second deposition. To the extent these actions—which are permitted by the Rules—could be construed to pose an unfair advantage, FCC is not without remedies. As the *Detoy* court explains, FCC could note on the record which questions it believes are beyond the scope of the deposition notice, and that answers to those questions are not intended as the answers of FCC, but rather, of Atkins as an individual. *See Detoy*, 196 F.R.D. at 367 (stating if deponent does not know the answer to question outside scope of matters described in the

deposition notice, "that is the examining party's problem").

■ Finally, it was not until SSL filed its motion to compel that FCC mentioned moving for a protective order. FCC states it did not immediately move for a protective order because the parties were "attempting to resolve the matter outside of court intervention." While the court appreciates FCC's intentions, its actions did not comply with proper procedure. *See Biovail Laboratories Inc. v. Anchen Pharmaceuticals, Inc.*, 233 F.R.D. 648 (C.D.Cal.2006). FCC should have immediately moved for a protective order to comply with Rule 30(d)(3), and continued to carry out its meet and confer efforts to attempt to resolve the dispute. If the dispute had been resolved via meet and confer efforts, FCC could have withdrawn its motion for the protective order.

### Sanctions.

Rule 30(d)(2) says "The court may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent." SSL requests the court to sanction FCC for the following items:

(a) Travel Costs: $86 for a roundtrip train ticket from Los Angeles to San Diego;

(b) Cost of Court Reporter at Second Deposition: cost not yet determined;

(c) Reasonable Attorneys Fees for Travel to and Take Second Deposition: $5,100, calculated by the amount of fees incurred for travel and time for the first deposition; and

(d) Reasonable Attorneys Fees for Bringing Motion to Compel: $7,950.

FCC argues that SSL's request for fees is unwarranted and egregious because FCC attempted in good faith to resolve the dispute while SSL refused to attempt to find an alternative solution.

Where the plaintiff's attorney improperly terminated a deposition of a non-party inventor, a district court in this circuit ordered the following sanctions against the inventor and his attorney (who also represented the plaintiff), jointly and severally, for cost of roundtrip airfare and two nights lodging, cost of the videographer/court reporter at the original deposition, and attorney's fees for bringing the successful motion to compel the deposition. *Biovail,* 233 F.R.D. at 655.

■ Here, because FCC caused the need to continue the deposition, FCC should bear the costs of resuming the deposition. FCC, therefore, shall reimburse SSL for the $86 roundtrip train fare and for the attorney's travel time to attend the second deposition. The court finds the amount stated in Cryan's declaration—6.0 hours for roundtrip travel on the train billed at $500 per hour for a total of $3000—is reasonable. Further, because SSL would not have had to bear the cost of the court reporter had it proceeded with its questioning at the original deposition of Atkins, it is reasonable for FCC to bear the cost of the court reporter at the continued deposition.

Finally, because SSL could only achieve this result by filing its motion to compel, FCC shall bear the cost of SSL's reasonable attorneys fees for bringing the motion to compel. The court has reviewed the declaration of Michael Cryan, and finds that the $7,950 for a total of 15.9 hours at the billing rate of $500 per hour is reasonable.

The court does not award sanctions for attorneys fees incurred in attending either the first or second deposition. SSL would have attended and sat through Zin's deposition of Atkins no matter how FCC acted. Further, SSL would have incurred the time for its own questioning of FCC's witness.

### Conclusion.

Based on the foregoing, the court **GRANTS** SSL's motion to compel and request for sanctions and **DENIES** FCC's cross motion for a protective order and request for sanctions. FCC and SSL shall arrange to conduct the continued Rule 30(b)(6) deposition of Atkins, in San Diego, California, for the purpose of SSL conducting its cross-examination within the remaining time available for the deposition. The continued deposition must take place within 30 days of this Order. This Order is without

684

prejudice to SSL later issuing its own Rule 30(b)(6) notice of deposition to FCC.

Within 10 days of this Order, FCC and its attorneys, who are jointly and severally liable, must reimburse SSL for the following expenses:

(a) $86.00 for travel costs;

(b) $3,000.00 for costs for travel time; and

(c) $7,950.00 for the costs incurred in filing the motion to compel.

Within 10 days of FCC's receipt of the invoice for the court reporter for the second deposition, FCC shall reimburse SSL for the cost of the court reporter for the continued deposition.

**IT IS SO ORDERED.**