Filed 3/12/15  City of Colton v. Guerrero CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| CITY OF COLTON,<br><br>        Plaintiff, Cross-defendant and Respondent,<br><br>v.<br><br>KRIS GUERRERO,<br><br>        Defendant, Cross-complainant and Appellant. | E058346<br><br>(Super.Ct.No. CIVDS1000475)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Bryan Foster and Brian S. McCarville, Judges.  Affirmed.

Lackie Dammeier & McGill, Michael A. Morguess; Silver, Hadden, Silver, Wexler & Levine, Brian Ross and Richard A. Levine for Defendant, Cross-complainant and Appellant.

Best Best & Krieger, Kira L. Klatchko and Irene S. Zurko for Plaintiff, Cross-defendant and Respondent.

1

BACKGROUND

Defendant, cross-complainant and appellant Kris Guerrero appeals an order denying his motion to compel arbitration following plaintiff, cross-defendant and respondent City of Colton's termination of his employment as a police officer and granting the city's petition for a permanent injunction enjoining him from pursuing arbitration.

The memorandum of understanding (MOU) between the city and the police officers' association provides for arbitration of grievances for certain disciplinary actions, including a dismissal taken against officers who are permanent employees. Guerrero contends that he had completed his probationary period before the city purported to extend it, and that he was a permanent employee when he was dismissed. The city contends, and the trial court found, that Guerrero was a probationary employee and was not entitled to arbitration.

The issue arose as follows.[1] Guerrero was hired by the City of Colton (hereafter the city) as a police officer in April 2007. As a new hire, he was subject to a period of probation. He contended that he was a lateral officer, i.e., a newly hired officer with prior police experience, and that pursuant to the policies of the Colton Police Department then in effect, he was subject to a 12-month probationary period rather than the 18-month

---

[1] The following information is taken from our opinion in *Guerrero v. City of Colton* (Apr. 14, 2012, E052441) [nonpub. opn.] (*Guerrero I*). It is derived from the allegations of the complaint and cross-complaint. These facts are largely undisputed. It is their effect on Guerrero's right to arbitration that is disputed. Additional facts will be stated in connection with specific issues raised in this appeal.

2

probation which would otherwise apply to a newly hired police officer. The city contended that he was subject to the 18-month probation. He was put on administrative leave on May 15, 2008, pending investigation of allegations of misconduct. In September 2008, the city notified Guerrero that his probationary period was being extended for six months, to April 15, 2009, in part because he had been on administrative leave for three months, leaving insufficient time to evaluate his performance. (*Guerrero I*, *supra*, E052441.)

In November 2008, the city finished its investigation into the allegations of misconduct and recommended termination of Guerrero's employment. Although the city did not consider Guerrero a permanent employee and did not believe he was entitled to a hearing prior to termination, "out of an abundance of caution," the city afforded him an opportunity to be heard, before terminating his employment. On February 2, 2009, after the hearing, the city terminated Guerrero's employment. However, as a result of some internal miscommunication and misunderstanding of its own procedures, the city—again "out of an abundance of caution"—decided to voluntarily afford Guerrero the appeal process provided for permanent employees in the MOU. This process includes an evidentiary hearing before an arbitrator. (*Guerrero I*, *supra*, E052441.)

In August 2009, Guerrero and the city selected an arbitrator. Subsequently, the city discovered "indisputable proof" that Guerrero's probation had been validly extended and that he was a probationary employee when he was terminated. Accordingly, the city refused to proceed with the arbitration. The arbitrator, however, refused to relinquish jurisdiction over the proceedings, and on January 15, 2010, the city filed a complaint for

3

declaratory and injunctive relief in the Superior Court of San Bernardino County. It sought a declaration that Guerrero was a probationary employee at the time of his termination and that he was not entitled to arbitration, and it sought a temporary restraining order, a preliminary injunction, and a permanent injunction enjoining the occurrence of any arbitration or appeal hearing between Guerrero and the city. (*Guerrero I*, *supra*, E052441.)

The trial court issued a temporary restraining order and, on April 7, 2010, it issued a preliminary injunction. The trial court found that the city was likely to prevail on the merits of its position that Guerrero was a probationary employee at the time of his termination with no standing to compel arbitration under the MOU, that the city would be irreparably harmed if compelled to go through arbitration, and that Guerrero would not be irreparably harmed if arbitration was not compelled because he had already received additional due process to which he was not entitled. (*Guerrero I*, *supra*, E052441.)

On March 3, 2010, prior to the court's ruling on the motion for preliminary injunction, Guerrero filed a cross-complaint entitled "Verified Petition to Compel Arbitration"; "Verified Petition for Writ of Mandate"; "Complaint for Damages and Injunctive Relief." On August 16, 2010, he filed a motion to compel arbitration. After briefing and a hearing, the trial court denied the motion. The court found that the motion raised exactly the same contention it had addressed in the motion for preliminary injunction. It found that the motion was effectively a request for reconsideration, but one which did not comply with the requirements of section 1008 of the Code of Civil

4

Procedure. It denied the motion solely on that procedural ground. (*Guerrero I*, *supra*, E052441.)

Guerrero filed a timely notice of appeal from the order denying his motion to compel arbitration. (*Guerrero I*, *supra*, E052441.) We determined that the motion depended upon the resolution of disputed facts. We reversed and remanded, directing the trial court to hold an evidentiary hearing "'on factual issues relating to the threshold issue of arbitrability, i.e., whether, under the facts before the court, the contract excludes the dispute from its arbitration clause or includes the issue within that clause.' [Citation.]" (*Guerrero I*, *supra*, E052441.)

On remand,[2] the parties filed a series of supplemental briefs. At a hearing on September 14, 2012, the trial court determined that it, rather than the arbitrator, should decide Guerrero's status as a probationary or permanent employee. After a further hearing on October 26, 2012, at which the parties agreed to submit the issue on the papers on file and after further argument, the court issued a statement of decision, finding that Guerrero was subject to an 18-month probationary period; that in the pertinent ordinance, the city did not distinguish between lateral hires and other hires; that the policies and procedures of the police department do not supersede the city's ordinances; that the city validly extended Guerrero's probation for an additional six months to April 15, 2009; that the city's failure to provide a performance evaluation report does not extend the

---

[2] Guerrero states that the current proceedings took place on remand from this court "on an unrelated issue." We are baffled by this characterization of our remand order, which afforded him the hearing before the trial court which is the subject of this appeal.

5

probationary period; and that no action by the city acted as an estoppel to prevent Guerrero's discharge without arbitration.

Judgment was entered denying Guerrero's petition for arbitration and permanently enjoining him from pursuing arbitration with the City of Colton. The court awarded costs and attorney fees to the city.

Guerrero filed a timely notice of appeal.

<u>LEGAL ANALYSIS</u>

## THE TRIAL COURT PROPERLY DENIED THE PETITION
## TO COMPEL ARBITRATION

*The City's Withdrawal from the Arbitration After It Had Begun Is Permissible If Guerrero Was Not Entitled to Arbitration.*

Guerrero begins by asserting that the city could not withdraw from the arbitration once it had begun, or as he puts it, the city could not "wrest jurisdiction from an arbitrator who has already assumed jurisdiction, and to whom both parties have already voluntarily submitted." However, Guerrero makes no persuasive argument that if the arbitration was voluntary, rather than mandated by the MOU, the city could not choose to withdraw before the arbitration was complete. Guerrero cites several statutes, but does not offer any analysis as to their effect in this situation. He merely states that the statutes do not provide the city with the option of withdrawing from arbitration once it has commenced. The statutes he cites—Code of Civil Procedure sections 1286.2 through 1286.8, pertaining to the vacation and correction of arbitration awards, and Civil Code section 1577, pertaining to mistake of fact—do not offer any support for his contention that once

6

the arbitration had begun, the city was compelled to proceed merely because it had voluntarily engaged in the process.

*The Court Had Jurisdiction to Determine Whether Guerrero Was a Permanent Employee.*

Next, Guerrero contends that his status as a permanent or probationary employee was exclusively subject to arbitration by the terms of the MOU and that the trial court had no jurisdiction to determine his status. He contends that the trial court's jurisdiction was limited to determining whether the dispute was arbitrable on its face. We disagree.

If an MOU between a public employees' representative organization and a public entity provides for arbitration of employee-employer disputes, a disagreement concerning the arbitrability of a particular dispute is subject to resolution by a court, unless the MOU expressly grants the arbitrator the authority to determine arbitrability. (*City of Los Angeles v. Superior Court* (2013) 56 Cal.4th 1086, 1093, 1096.) If the MOU does not expressly confer that authority on the arbitrator, a court determining whether a party has a contractual duty to arbitrate a particular dispute must "'examine and, to a limited extent, construe the underlying agreement.' [Citation.]" (*Id*. at p. 1096.) "For disputes arising under collective bargaining agreements, there is a 'presumption of arbitrability,' under which a court should order arbitration of a grievance "'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."' [Citations.] 'This presumption of arbitrability for labor disputes recognizes the greater institutional competence of arbitrators in interpreting collective-bargaining agreements, "furthers the national labor policy of peaceful resolution of labor

7

disputes[,] and thus best accords with the parties' presumed objectives in pursuing collective bargaining."' [Citations.]" (*Ibid*.)

Subject to this limitation, however, arbitration agreements are construed using the principles applicable to contracts generally. (*Provencio v. WMA Securities, Inc.* (2005) 125 Cal.App.4th 1028, 1031.) "When there is no conflicting evidence regarding the interpretation of an arbitration agreement, we exercise our independent judgment to determine as a matter of law whether the agreement applies to a controversy. Where the trial court's decision of arbitrability is based on disputed facts, however, the substantial evidence standard applies. Under that test, we must: accept the trial court's resolution of disputed facts when supported by substantial evidence; presume the court found every fact and drew every permissible inference necessary to support its order; and defer to its determinations regarding the credibility of witnesses and the weight of the evidence." (*Ibid*.) Here, there was no conflicting evidence concerning interpretation of the MOU. Accordingly, we will determine the scope of the MOU independently.

The language of the MOU quoted by Guerrero does not expressly provide that arbitrators are empowered to decide their own jurisdiction. The quoted passage, which falls under the heading "Definitions," states, "Grievance—An alleged violation or non-compliance with the provisions of this MOU, any supplemental MOU, City of Colton's written or unwritten personnel rules and regulations, departmental rules and regulations, and other policies and practices. The following disciplinary actions taken against permanent employees are appealable under this procedure:

8

"a.  Suspensions

"b.  A salary reduction [*sic*]

"c.  Demotions

"d.  Dismissals."  (MOU, art. I, § 3(B), ¶ 3.)

This merely defines what constitutes a grievance and provides that four particular types of grievances are "appealable" by permanent employees.[3]  It does not state that an arbitrator is empowered to decide whether a particular dispute is or is not subject to arbitration.  Nor does any other language in the MOU address that question.  Accordingly, because the MOU does not expressly confer that authority on the arbitrator, the trial court had jurisdiction to determine arbitrability.  (*City of Los Angeles v. Superior Court*, *supra*, 56 Cal.4th at p. 1096.)

Guerrero argues that if he had "simply filed a grievance on whether he was a permanent employee, such issue clearly would have culminated in arbitration."  He contends that the fact that the city voluntarily submitted the dismissal to arbitration on the assumption that Guerrero was a permanent employee, thus obviating the need for him to file a grievance to determine his status, should have no effect on his right to arbitration of his status.

We disagree that a grievance as to Guerrero's status would necessarily have culminated in arbitration.  The language of the MOU is ambiguous, to say the least.  The MOU expressly provides that dismissal and three other specified disciplinary actions

_____

[3]  As we discuss below, the MOU does not explicitly define "appeal."

9

taken with respect to a permanent employee are "appealable." The parties understand this to mean that such grievances are necessarily resolved through arbitration. However, the MOU does not define "appeal" or explicitly state that "appeal" equals arbitration. Nor does it provide any basis for concluding that an appealable grievance is necessarily an arbitrable grievance. On the one hand, under "General Provisions," it states "Grievance/Appeal hearings—by an arbitrator shall be private." (MOU, art. I, § 3(C), ¶ 7.) This appears to equate appeals with arbitration. On the other hand, however, the MOU also provides that after having exhausted several preliminary steps in the general grievance process—i.e., the process by which grievances other than the four types of grievances addressed in article I, section 3(B), paragraph 3—an employee may submit a written appeal to the city manager. If the employee is unsatisfied with the city manager's resolution, the employee may then "request" arbitration. (MOU, art. I, § 3(C), ¶¶ 4, 5.) This part of the MOU thus distinguishes between "appeal" and "arbitration."

Under the Public Safety Officers Procedural Bill of Rights Act, or POBRA (Gov. Code, § 3300 et seq.), a permanent police officer is entitled to a full evidentiary hearing before a neutral adjudicator with respect to serious punitive actions, such as demotion, suspension, reduction in pay and dismissal, although a lesser level of due process may suffice for less serious disciplinary actions. (See *James v. City of Coronado* (2003) 106 Cal.App.4th 905, 909-910.) Arguably then, the MOU can be interpreted to provide that a permanent employee has the right to arbitration of the four disciplinary actions stated in article I, section 3(B), paragraph 3, while both permanent and probationary employees can "request" arbitration of all other types of grievances. (MOU, art. I, § 3(B), ¶ 2

10

defines "grievant" as "[a]ny person employed full-time by the City." It does not exclude probationary employees.) It is not clear that arbitration must be afforded upon request under the general grievance procedure, however, or whether it is within the discretion of the city manager to allow arbitration. (MOU, art. I, § 3(C), ¶ 5.) If it is within the discretion of the city manager, then although Guerrero could have filed a grievance seeking confirmation that he was a permanent employee, the grievance process would not necessarily have culminated in arbitration.

For purposes of this issue, however, we do not need to resolve this ambiguity, because in *Guerrero I*, *supra*, E052441, we directed the trial court to resolve the "disputed factual issues" underlying the motion to compel arbitration. These issues included Guerrero's status as probationary or permanent. (*Ibid*.) Accordingly, we review the trial court's finding only to determine whether it is supported by substantial evidence. (*Provencio v. WMA Securities*, *Inc*., *supra*, 125 Cal.App.4th at p. 1031.)

*Substantial Evidence Supports the Trial Court's Finding That Guerrero Was Not a Permanent Employee When He Was Dismissed.*

Guerrero contends that it was undisputed that he was a lateral officer, i.e., a person "who possesses a Basic Certificate issued by Peace Officer Standards and Training, State of California, or any person who has successfully completed a Basic Academy certified by Peace Officer Standards and Training, State of California." (Personnel System Rules and Regulations for the City of Colton (hereafter Personnel Rules), rule VII, § 5.) He contends that a lateral officer is subject to a 12-month probation, while a new hire is subject to an 18-month probation. He contends that he had completed his 12-month

11

probation before the city purported to extend his probation and before he was dismissed. The city responds that it is irrelevant whether Guerrero was a lateral officer, because a city ordinance provides for an 18-month probation for all newly hired officers, lateral or otherwise.

The city relies on its Ordinance No. 1653, which provides that ". . . Paragraph A of Section 2.48.080 of the Colton Municipal Code [is] amended to read as follows: [¶] . . . [¶] A. All regular and promotional appointments shall be tentative and subject to a probationary period of eighteen months for police officers . . . ." It does not provide for an exception for lateral officers. However, Ordinance No. 1653 was superseded by Ordinance No. 0-03-00, section 8, in 2000. (Colton Mun. Code, § 2.48.080.) As of 2000, section 2.48.080 no longer addresses probationary periods for police officers.[4] We have found no successor ordinance which does address probationary periods for police

_____

[4] Current Colton Municipal Code section 2.48.080, now entitled "Request for hearing," provides:

"A. Any permanent, full-time Employee in the competitive service who has had any disciplinary action, dismissal or reduction in pay Shall be entitled to request a Written statement of the reasons for such action. Such a request Must be made within three Working Days Following the action, and he Shall have three additional Days within which to answer the charges in writing. In the event the Employee requests the statement and prepares his Written answer, copies of both Shall be filed with the City Manager, who Shall transmit them to the Civil Service Board. Within ten Days from the date of filing his answer to the Written charges, or in the event such Written charges have not been made available to him within the time prescribed, then within ten Days after the action taken to demote, dismiss, or reduce the pay of the Employee, he May file a Written demand with the City Manager requesting a hearing before the Civil Service Board. The civil service board Shall then investigate the case (by means of reports/testimony/merits of the case) and conduct a hearing as provided in this chapter and by the rules.

"B. The provisions of this section Shall not apply to reductions in pay which are a Part of a General Plan to reduce salaries and wages. [¶] (*Ord. 0-03-00 § 8, 2000.*)"

12

officers. However, the Personnel Rules, which appear to have been adopted by the city on March 7, 2000, contain the identical language with respect to probation and, like former section 2.48.080 of the Colton Municipal Code, do not refer to "lateral officers." (Personnel Rules, rule IX, § 1.)

Guerrero relies on a Colton Police Department Policy and Procedures Manual dated 2006, which provides that while entry level sworn employees are on probation for 18 months, lateral officers are on probation for 12 months. However, the current chief of police for the city stated in a declaration that since he was hired by the city in 1987, the Colton Police Department had at all times maintained an 18-month probationary period for all police officer hires. He stated that his predecessor as police chief had attempted to implement the 2006 procedure manual, but that it was never adopted by the city. The police chief's declaration is substantial evidence—reasonable, credible and of solid value (*Roddenberry v. Roddenberry* (1996) 44 Cal.App.4th 634, 651)—that supports the trial court's conclusion that Guerrero was subject to an 18-month probationary period. Accordingly, we must affirm the trial court's finding.

*The City's Purported Failure to Comply with Its Procedure in Extending Guerrero's Probation Did Not Result in His Attaining Permanent Status.*

Guerrero contends that even if he was subject to an 18-month probationary period, that period expired on October 9, 2008, and the city's purported six-month extension was invalid because the city failed to comply with its procedures for extending probation.

The city's Personnel Rules provide: "Prior to expiration of an employee's probationary period, the employee's supervisor, with the approval of his Department

13

Head, shall recommend to the Human Resource Director that one of the following actions be taken: [¶] 1. Grant the employee permanent status[;] [¶] 2. Extend the probationary period for a period not to exceed six months[;] [¶] 3. Terminate the employee because of unsatisfactory performance. . . . [¶] Notification to the Human Resource Director of the recommended action shall be accompanied by a performance evaluation report on the employee, completed within the 30-day period immediately proceeding [*sic*] the date when the employee's probationary period is due to expire." (Personnel Rules, rule IX, § 1.)

Here, defendant was notified by a letter, ostensibly from the chief of police but signed by a Captain Ward, that his probation was being extended to April 16, 2009. The letter stated that the department was exercising its option to do so because Guerrero had been on administrative leave since May 15, 2008, pending the outcome of two internal affairs investigations, and because Guerrero's three-month absence made it difficult to evaluate his performance.

Guerrero contends that in order to comply with this rule, Guerrero's supervisor "would have had to have notified the Human Resource Director between September 9, 2008 and October 9, 2008, of his decision to extend Guerrero's probation and also have submitted a performance evaluation along with that notification." However, he states, there is no evidence that this happened. "Moreover, and more importantly," he states, "there is no evidence that the Human Resource Director agreed with the recommendation and actually extended the probation."

14

For purposes of the motion to compel arbitration, it was Guerrero's burden to prove that he was entitled to arbitration. If, as he asserted, his right to arbitration hinged on his status as a permanent employee, he also had the burden to prove that he was a permanent employee. Guerrero has not cited any evidence produced in the trial court that tends to prove that the police department and the city's human resource director did not comply with the city's procedures to extend his probation. The record does include an email from Lieutenant deDianous to the human resource director recommending that Guerrero's probation be extended by six months because of the pending internal affairs investigation and because Guerrero had been on administrative leave for three months. Guerrero asserts that it is "undisputed" that the human resource director did not extend his probation. He appears to contend that the human resource director rather than the police chief had the duty to notify him of the extension, but we see nothing in the rule that requires this. We see no reason that the human resource director could not direct the chief of police to notify Guerrero.

The sole irregularity appears to be the failure to provide a performance review to the human resource director along with the recommendation that probation be extended. Even if we assume that the information deDianous did provide—that Guerrero had been on administrative leave for three months and that he was the subject of an internal affairs investigation—does not suffice as a performance review, the city's failure to adhere strictly to the procedure for extending probation does not mean that Guerrero was a permanent employee. The city's Personnel Rules do not provide that upon expiration of a probationary period, the employee automatically attains permanent status. As stated

15

above, the procedure provides that the employee's supervisor shall recommend to the human resource director one of three actions: "1. Grant the employee permanent status[;] [¶] 2. Extend the probationary period for a period not to exceed six months[;] [¶] 3. Terminate the employee because of unsatisfactory performance. . . ." (Personnel Rules, rule IX, § 1.) Accordingly, permanent status must be affirmatively granted; a probationary employee does not attain permanent status by default in the absence of action by the human resource director.

Guerrero relies on *Zeron v. City of Los Angeles* (1998) 67 Cal.App.4th 639 to assert that in the absence of a valid extension of his probation, he did attain permanent status upon the expiration of his probationary period. *Zeron* is distinguishable, however, because under the charter of the City of Los Angeles, a probationary employee does become permanent upon expiration of probation unless action is taken to dismiss him. (*Id*. at p. 643.)

*Guerrero Has Not Established That the City's Personnel Rules Provide Probationary Police Officers the Same Right to Arbitration As Permanent Officers.*

Rule IX, section 3, of the Personnel Rules provides:

"REJECTION OF A PROBATIONER: During the probationary period, an employee may be rejected by the Department Head without cause and without the right of appeal or hearing. With regard to Public Safety Officers, there shall be no punitive action

16

undertaken without providing the officer with opportunity for administrative appeal. (Government Code 3304, b.)"**5**

Guerrero contends that this rule means that as a probationary police officer, he was entitled to the same type of grievance procedure afforded to permanent officers under the MOU. We are not persuaded.

Guerrero's contention calls upon us to interpret Personnel Rule IX, section 3. Ordinances and regulations are legislative enactments of cities. (Cal. Const., art. 11, § 7.) Ordinances and regulations, like statutes, must be interpreted in a manner which will effectuate the intent of the enacting body. (*Tower Lane Properties v. City of Los Angeles* (2014) 224 Cal.App.4th 262, 268.) This is a question of law, which a reviewing court decides independently. (*Ibid.*) We begin by examining the words themselves, because legislative language is generally the most reliable indicator of the underlying intent. (*People v. Toney* (2004) 32 Cal.4th 228, 232.) If the language is unambiguous, we presume that the enacting body meant what it said, and the plain meaning of the legislation governs. (*Ibid.*) If the language does not clearly reflect the underlying legislative intent, however, we apply the rules of statutory construction and/or turn to

---

**5** Government Code section 3304, subdivision (b) (hereafter section 3304(b)) provides:

"No punitive action, nor denial of promotion on grounds other than merit, shall be undertaken by any public agency against any public safety officer who has successfully completed the probationary period that may be required by his or her employing agency without providing the public safety officer with an opportunity for administrative appeal." "Punitive action" means "any action that may lead to dismissal, demotion, suspension, reduction in salary, written reprimand, or transfer for purposes of punishment." (Gov. Code, § 3303, introductory paragraph.)

17

extrinsic sources to attempt to ascertain that intent. (*Tower Lane Properties v. City of Los Angeles*, at pp. 268-269.)

We agree with Guerrero that the plain language of Personnel Rule IX, section 3 demonstrates that the city intended to differentiate between probationary employees in general and probationary safety officers, and to confer on probationary safety officers the right to some sort of administrative hearing before being dismissed. However, we do not agree that merely by referencing Government Code section 3304(b), Personnel Rule IX, section 3, unambiguously confers full hearing rights on probationary officers to the same extent as permanent officers.

There is no statutory requirement for any particular procedure for administrative appeals under section 3304(b). Rather, Government Code section 3304.5 provides, "An administrative appeal instituted by a public safety officer under this chapter shall be conducted in conformance with rules and procedures adopted by the local public agency." Here, neither the Personnel Rules nor the MOU describes the scope of the administrative appeal to which probationary officers are entitled. When the scope of an administrative appeal hearing is not prescribed by personnel rules, the MOU or other established policy, the only requirement is that the administrative appeal hearing must comport with due process. (*James v. City of Coronado*, *supra*, 106 Cal.App.4th at pp. 909-910.) Due process is, of course, a flexible concept and means fundamentally only a meaningful opportunity to be heard. (*Id.* at p. 910.) It does not require trial-like hearings in all instances. The sufficiency of a proceeding for purposes of due process "'depends upon a complexity of factors. The nature of the alleged right involved, the

18

nature of the proceeding, and the possible burden on that proceeding, are all considerations which must be taken into account.'" (*Oberholtzer v. Commission on Judicial Performance* (1999) 20 Cal.4th 371, 391, fn. 16.)

Ordinarily, probationary employees have no vested property interest in their continued employment and may be dismissed without cause and without a hearing. (*Lubey v. City and County of San Francisco* (1979) 98 Cal.App.3d 340, 345.) A probationary police officer who is dismissed for misconduct which might impair his reputation or standing in the community, or which might seriously impair his ability to earn a living, is entitled, as a matter of due process, to a hearing to attempt to refute the charges and clear his name (*id.* at p. 346), but unlike a tenured police officer, is not entitled by section 3304(b) to a hearing at which the public agency bears the burden of proving grounds for termination or at which trial-type procedures apply. (See, e.g., *Riveros v. City of Los Angeles* (1996) 41 Cal.App.4th 1342, 1359-1361; *James v. City of Coronado*, *supra*, 106 Cal.App.4th at pp. 910-912.)

A city may, of course, choose to extend the provisions of POBRA to probationers as well. (*Guinn v. County of San Bernardino* (2010) 184 Cal.App.4th 941, 950 [Fourth Dist., Div. Two].) In doing so, a city may choose to confer on probationary officers the same due process rights afforded to permanent officers, or it may provide a more limited hearing right to probationers, as long as due process is satisfied. (*James v. City of Coronado*, *supra*, 106 Cal.App.4th at pp. 909-910.) Accordingly, we are not persuaded that merely by stating that a probationary officer is to be afforded the opportunity for an administrative appeal before the city may impose any punitive action, the city necessarily

19

intended to elevate due process for probationary officers to the level afforded to permanent officers.

When legislative language is ambiguous, a court which is called upon to construe the legislation applies well-settled rules of statutory construction or may turn to extrinsic sources for evidence of the intent underlying the legislation. (*Tower Lane Properties v. City of Los Angeles*, *supra*, 224 Cal.App.4th at pp. 268-269.) Even though this is a question of law subject to de novo review, however, we are not required to reach a conclusion as to the intent underlying legislation unaided by the appellant. An appellant bears the burden of demonstrating reversible error. (*State Farm Fire & Casualty Co. v. Pietak* (2001) 90 Cal.App.4th 600, 610.) To meet that burden, an appellant must provide adequate briefing, containing argument, analysis and citations to pertinent authority. "'Where a point is merely asserted by counsel without any argument of or authority for its proposition, it is deemed to be without foundation and requires no discussion.' [Citations.]" (*Colony Hill v. Ghamaty* (2006) 143 Cal.App.4th 1156, 1163.) This is true even if the standard of review is de novo. (*Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6.) Here, because Guerrero merely asserts that Personnel Rule IX, section 3, confers a right to a full evidentiary hearing on probationary officers without engaging in any analysis, we decline to address the matter further.

*Substantial Evidence Supports the Trial Court's Implied Finding That Equitable Estoppel Does Not Apply.*

Guerrero contends that the city should be equitably estopped from denying his right to proceed with arbitration because (1) everyone assumed he was a permanent employee; (2) the city manager expressly agreed that Guerrero was entitled to arbitration; (3) the chief of police offered Guerrero the option of resigning or appealing his termination; and (4) Guerrero relied on the city's conduct to assume that he was a permanent employee and decided to appeal his termination rather than resign. If he had believed that he was not entitled to appeal his termination as a permanent employee, he states, he would have resigned.

Equitable estoppel is codified in Evidence Code section 623: "Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it." In order to prevail, Guerrero would have had to show that even though the city knew Guerrero was a probationary employee, it deliberately misled him to believe that he was a permanent employee in order to induce him to agree to arbitration rather than to resign. There is no such evidence, and Guerrero does not even claim that there is. On the contrary, the record shows that, as Guerrero asserts, "everyone" assumed he had attained permanent status. It was only after the city determined that he was still on probation that it withdrew from the arbitration. Accordingly, his contention fails.

## DISPOSITION

The judgment is affirmed.  Costs on appeal are awarded to the City of Colton.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


McKINSTER_____
                                              J.

We concur:


HOLLENHORST_____
          Acting P. J.


RICHLI_____
          J.

22